IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-017

Filing Date:   April 21, 2009

Docket No. 30,453

STATE OF NEW MEXICO,

        Plaintiff-Appellee,

v.

ERNEST JOSE GALLEGOS,

        Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Neil C. Candelaria, District Judge

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**BOSSON, Justic**e.

**{1}**    The decision filed on March 23, 2009, in this case is withdrawn and the following substituted therefor.

**{2}**    Jim Hogan was brutally killed by an armed burglar in the garage of his home on a Tuesday night in August, 2004.  His wife, Carole Hogan, sat bound and blindfolded inside the home after succumbing to the intruder and waited helplessly while her husband was beaten to death in their garage.  Nine months later, Defendant was indicted for various

1

crimes in connection with the attack on the Hogans and later convicted on all counts.

**{3}** Defendant raises several claims of error on direct appeal and requests various remedies. For the reasons stated, we conclude that Defendant's claims are without merit and affirm the district court on all counts.

## BACKGROUND

**{4}** Jim and Carole Hogan spent the summer of 2004 remodeling their home located in a gated community in northeast Albuquerque. Defendant worked as a contractor in the Hogan's home and installed new bathroom mirrors and shower doors. During the construction, Jim could not find his wristwatch and confronted Defendant and his partner about it, asking if they had been in his bedroom drawers. Jim later found the watch and called Defendant's employer to apologize for the misunderstanding. However, Defendant and his partner refused to return to the house after the accusation.

**{5}** Work on the house was completed in mid-August 2004, about six weeks after Defendant last worked in the home. On August 24, 2004, after returning home from dinner, Jim and Carole were enjoying a quiet evening when Carole was suddenly confronted by a masked man in a hallway inside the home. The intruder held a gun in one hand and a table leg in the other.

**{6}** Jim and Carole submitted to the intruder and the man bound their wrists and ankles with zip ties, blindfolded them with duct tape, and taped their mouths shut. The man stated that he was there to kill Jim and demanded access to the safe in the garage where the Hogans kept guns, papers, and jewelry. Carole did not know the combination so Jim gave it to him. When the man could not open the safe on his own, he picked Jim up and hauled him into the garage so that Jim could open the safe. Carole heard the safe open, and then listened as the man beat her husband to death.

**{7}** The man returned to Carole and asked where her jewelry was. After collecting the jewelry from a drawer upstairs, he took Carole to a closet in the bathroom, closed the door, and threatened to kill her if she tried to escape. Once Carole believed that the intruder had left the home, she broke her wrist restraints and called 911. Police arrived quickly on the scene and saw a man climbing over the wall around the Hogan's neighborhood. The police saw the man jog over to a truck parked nearby and stopped him as he tried to drive away. When police confronted him, he was sweating profusely and was bleeding from a fresh cut on his cheek. The man produced a driver's license with the name "Jose Gallegos." Four police officers who observed Defendant at the scene later testified at trial and identified Defendant as the man they saw in the pickup.

**{8}** After initially cooperating, the man ran from the truck when the police tried to handcuff him and climbed back over the wall into the gated community, escaping arrest. Two duffel bags were found on top of the wall around the neighborhood in the location

where the man was first seen by officers, which contained personal items belonging to the Hogans and items used in the attack and robbery. Defendant was apprehended nine months later in Mexico and turned over to U.S. custody. Following an eight-day trial, Defendant was sentenced to life imprisonment plus sixty-three and one half years for first-degree murder, kidnapping, aggravated burglary, armed robbery, aggravated battery, and tampering with evidence.

## DISCUSSION

### Grand Jury Evidence and Indictment

### A.      Hearsay Evidence

{9}      Defendant contends that the indictment issued against him was based wholly upon hearsay evidence presented by the lead detective in the case to the grand jury, and should therefore be dismissed. NMSA 1978, Section 31-6-11(A) (2003) states that "[e]vidence before the grand jury upon which it may find an indictment is that which is lawful, competent and relevant" and that "[t]he Rules of Evidence shall not apply."

{10}      While Defendant's case was pending, the Court of Appeals addressed the issue of whether hearsay evidence could provide the foundation for a lawful indictment in *State v. Romero*, 2006-NMCA-105, 140 N.M. 281, 142 P.3d 362. In *Romero*, the Court of Appeals stated that "the Legislature has not authorized judicial review of the evidence presented to a grand jury except for its sufficiency and then only upon a showing of prosecutorial bad faith." *Id.* ¶ 5; *see also* § 31-6-11(A) ("The sufficiency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury."); *Jones v. Murdoch*, 2009-NMSC-002, ¶ 19, 145 N.M.473, 200 P.3d 523 ("[A] request for post-indictment relief would necessarily challenge the sufficiency of the evidence upon which the grand jury's indictment is based. As such, the target-turned-defendant must establish bad faith on the part of the prosecutor as a prerequisite to obtaining a dismissal of the indictment."); *Buzbee v. Donnelly*, 96 N.M. 692, 706-07, 634 P.2d 1244, 1258-59 (1981) (stating under former law that appellate courts will not review challenges to the kind and degree of evidence presented to a grand jury without an allegation of prosecutorial misconduct).

{11}      Like the defendant in *Romero*, Defendant has not argued that his indictment was the result of prosecutorial bad faith. Accordingly, we follow *Romero* and hold that "[i]n the absence of prosecutorial bad faith, there is no clear statutory authority for judicial review . . . [and] in the absence of clear statutory authority for judicial review, . . . the grand jury's determination of probable cause is conclusive." *Romero*, 2006-NMCA-105, ¶ 8.

### B.      Instruction on first-degree kidnapping

{12}      Defendant also contends that the prosecutor did not properly instruct the grand jury

on the necessary elements of first-degree kidnapping and argues that the resulting charge should be dismissed. It is undisputed that a prosecutor has a duty to advise the grand jury of the essential elements of the charges presented. *See State v. Augustin M.*, 2003-NMCA-065, ¶ 52, 133 N.M. 636, 68 P.3d 182. At issue in this appeal is what elements are "essential" and must be presented to the grand jury when the State seeks an indictment for first-degree kidnapping.

**{13}** Kidnapping is defined by NMSA 1978, Section 30-4-1(A) and (B) (2003).[1] The elements of Section 30-4-1(A) are set forth in UJI 14-403 NMRA and establish the offense of second-degree kidnapping. *See* UJI 14-403 committee commentary ("This instruction is for the crime of second degree felony kidnapping where the victim is freed without great bodily harm having been inflicted."). In a criminal trial, if the petit jury finds a defendant guilty of kidnapping based on the elements in Subsection (A) as contained in UJI 14-403, the jurors are then directed to use a special verdict form which asks them to consider the elements contained in Subsection (B): (1) whether the Defendant voluntarily freed the victim in a safe place, and (2) whether the defendant released the victim without physical injury. *See* UJI 14-6018 NMRA. If the State meets its burden with regard to both Subsections (A) and (B), then the accused may be convicted of first-degree kidnapping. If the State meets its burden with regard to Subsection (A) but fails to establish the elements contained in Subsection (B), then the accused may only be convicted of second-degree kidnapping.

**{14}** In this case, the prosecutor's instructions to the grand jury conformed with UJI 14-403 and contained the elements found in Subsection (A). However, Defendant argues that the prosecutor, in addition to presenting the essential elements of kidnapping found in UJI 14-403, was also required to present the special verdict form which contains the elements in Subsection (B) in order to indict Defendant for first-degree kidnapping. UJI 14-6018. Thus, Defendant suggests that the instructions found in the special verdict form are essential elements that must be presented to the grand jury.

**{15}** The State raises two points in support of its position that the questions contained in the special verdict form are not "essential elements" of first-degree kidnapping. First, the

---

[1] **30-4-1. Kidnapping.**
 A.     Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent:
        (1)     that the victim be held for ransom;
        (2)     that the victim be held as a hostage or shield and confined against his will;
        (3)     that the victim be held to service against the victim's will; or
        (4)     to inflict death, physical injury or a sexual offense on the victim.
 B.     Whoever commits kidnapping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict physical injury or a sexual offense upon the victim.

4

State contends that the inquiries set forth in the special verdict form are merely mitigating, rather than essential, factors that reduce a charge of first-degree kidnapping to second-degree kidnapping. We are inclined to disagree with this assessment.

**{16}** The elements in Subsection (A), found in UJI 14-403, if established, only support a charge of second-degree kidnapping. If the State wishes to *convict* an accused of first-degree kidnapping, it must also establish the elements in Subsection (B), contained in the special verdict form. It follows that a prosecutor seeking to indict an accused for first-degree kidnapping should also be required to present both the primary elements found in UJI 14-403 as well as the additional elements found in the special verdict form to the grand jury.

**{17}** The State's second argument is that the special verdict form is used only if first-degree kidnapping is "in issue" and states that first-degree kidnapping is not "in issue" until different theories and divergent evidence is presented in an adversarial forum. *See* UJI 14-6018 use note; *State v. Barber*, 2004-NMSC-019, ¶ 12, 135 N.M. 621, 92 P.3d 633. The State's position is premised on the idea that the special verdict form would ask the grand jury to make a factual determination as to the Defendant's conduct. The Court of Appeals stated in *Augustin M.* that such determinations "are reserved for conviction or acquittal by a trial jury after argument of counsel. We do not see the desirability, much less the necessity, of requiring the grand jury to engage in the fine factual distinctions and evaluation of conduct and causation . . . when it does not have the benefit of argument as to the significance of the distinctions." *Augustin M.*, 2003-NMCA-065, ¶ 58. Therefore, the State argues that it was unnecessary to present the elements in Subsection (B) at the grand jury stage because those proceedings are not adversarial. *See id.* ¶ 59; *see also Buzbee*, 96 N.M. at 696, 634 P.2d at 1248 (stating that the grand jury "does not hear both sides but only the prosecution's evidence, and does not [make] a choice between two adversaries" (internal quotation marks and citation omitted)).

**{18}** This assessment appears to misapprehend the State's burden with regard to kidnapping. The elements set forth in the special verdict form are not affirmative defenses that must be raised by a defendant at trial. Rather, it is the State's burden to prove the elements contained in the special verdict form in order to obtain a conviction for first-degree, rather than second-degree, kidnapping. Therefore, it is not unreasonable to expect the State to establish probable cause for the same elements at the grand jury stage.

**{19}** Although we appreciate the seriousness of this issue and believe that Defendant has presented an actual controversy, we must decide this issue on another basis due to the fact that the petit jury has already rendered its verdict. As we stated in *State v. Ulibarri*,

> [t]he grand jury only makes a finding of probable cause. A defendant should not be required to face a trial in the absence of probable cause. But at a trial on the merits, the State has the obligation to prove not just probable cause but guilt beyond a reasonable doubt. Like difficulties with the quality or type of evidence relied upon by the grand jury in returning an indictment, *any*

5

*question of probable cause is necessarily obviated by a finding of guilt.*

2000-NMSC-007, ¶ 2, 128 N.M. 686, 997 P.2d 818 (citation omitted and emphasis added). Had Defendant filed a timely petition for an extraordinary writ after the district court denied his motion to dismiss the indictment, we would have had the opportunity to reach the merits of this claim. *See Davis v. Traub*, 90 N.M. 498, 499, 565 P.2d 1015, 1016 (1977); *In re Grand Jury Sandoval County*, 106 N.M. 764, 767, 750 P.2d 464, 467 (Ct. App. 1988) ("where an irregularity prejudices the grand jury proceedings, as alleged here, a writ of prohibition dismissing indictment may properly issue."). However, because the petit jury was properly instructed on all of the elements of first-degree kidnapping and found Defendant guilty, then "any question of probable cause is necessarily obviated" by the jury's finding of guilt. *Id.* It is too late now to inquire into the evidence presented to the grand jury or the finding of probable cause by the grand jury.

**Juror Interruption During Opening Statement**

**{20}** During the State's opening argument, the trial judge stopped the proceedings after a juror signaled for his attention and appeared as if she was getting ready to leave the jury box. The judge conducted an individual voir dire of the juror in chambers where the juror stated that she was physically affected by the opening statements and felt she was unable to continue sitting through the trial. The trial judge excused the juror for cause, and Defendant requested a mistrial based on the juror's "highly unusual interruption and high-profile replacement."

**{21}** "'We review a trial court's denial of a motion for mistrial under an abuse of discretion standard.'" *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516 (quoting *State v. Gonzales,* 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131). "An '[a]buse of discretion exists when the trial court acted in an obviously erroneous, arbitrary, or unwarranted manner.'" *Id.* ¶ 50 (quoting *State v. Stills,* 1998-NMSC-009, ¶ 33, 125 N.M. 66, 957 P.2d 51 (alteration in original)).

**{22}** It is not contested that the trial court properly excused the affected juror. Instead, Defendant argues that the dismissal of one juror may have tainted the remaining jurors, thereby implicating his right to a fair trial by an unbiased jury. *Cf. State v. Gardner*, 2003-NMCA-107, ¶12 , 134 N.M. 294, 76 P.3d 47 (holding that trial court did not abuse its discretion by declining to grant mistrial after dismissing one juror for cause in absence of evidence of bias among remaining jurors). We recognize that "a lone biased juror undermines the impartiality of an entire jury," *id.* ¶ 10, and therefore, a mistrial may be warranted if the juror's interruption and dismissal "unfairly affected the jury's deliberative process and resulted in an unfair jury," *id.* ¶ 12 (internal quotation marks and citation omitted). *See also* 50A CJS *Jury* § 518 ("A mistrial generally should be granted only when bias is fixed in the minds of the jurors so as to preclude a fair and objective verdict."). However, to prevail on his claim, Defendant bears the burden to establish that the jury was not fair and impartial, and must demonstrate bias or prejudice on the part of the remaining

jurors. *See Gardner*, 2003-NMCA-107, ¶¶ 9-10; *State v. Price*, 104 N.M. 703, 708, 726 P.2d 857, 862 (Ct. App. 1986).

**{23}**  Defendant has not presented any evidence to establish that the dismissal of the affected juror compromised the remaining jurors' ability to be fair and impartial.  *See Gardner*, 2003-NMCA-107, ¶ 10.  Here, the trial judge stated that he had watched the jurors as they listened to the State's opening argument, but the judge offered no indication that the remaining members of the panel were impacted by the interruption. Defendant has made no claim that there were improper communications among the jurors that would tend to indicate bias.  We consider it unlikely that the affected juror's personal bias infected the remaining panel "because the trial court excused her from service and replaced her with an alternate, which is the appropriate remedy when a juror exhibits apparent bias."  *Id.* ¶ 12.  Given the early stage of the trial, the discreet way the juror signaled the judge, and the judge's observation that the other jurors were paying attention, a mistrial was not indicated in this case.  Therefore, we conclude that "the trial court's finding was not against the logic and effect of the facts and circumstances before the court," and the trial judge properly rejected Defendant's request for a mistrial.  *Id.* (internal quotation marks and citation omitted).

**{24}**  Before resuming with the trial after the juror's excusal, the judge and counsel discussed what course of action to take.  Defense counsel requested that the trial court individually voir dire the remaining jurors.  The State responded that the jurors should be presumed to follow the trial court's instruction, but suggested that the court offer a curative instruction to explain the juror's absence.  The trial court ultimately declined both suggestions in an effort to avoid calling additional attention to the matter.  Although a voir dire of the remaining jurors would have produced a helpful record for our review, the trial judge offered a compelling reason for his decision, fearing that additional instruction might prove more prejudicial than helpful.  We have recognized that

> [i]n the case of alleged juror misconduct, a decision of the trial court to voir dire a jury is a matter of discretion limited only by the essential demands of fairness.  If there is no evidence of probable juror impropriety, the trial court does not abuse its discretion by refusing to voir dire the jury.

*State v. Case*, 100 N.M. 714, 719, 676 P.2d 241, 246 (1984).  We find no abuse of discretion in this instance.

**Juror Bias**

**{25}**  Defendant contends that the trial court should have sua sponte declared a mistrial after two jurors approached the bailiff and asked if there was any chance that the case would be resolved by a plea bargain and not continue into the following week.  Defendant argued at trial that these questions suggested that the jurors had violated their oath to keep an open mind, and, accordingly, Defendant requested that the court voir dire the two jurors and reissue its instructions to refrain from discussing the case.  The trial judge granted both

requests, and after additional voir dire none of the jurors indicated they had made up their minds about the trial. The trial judge reminded the jurors not to discuss the case with anyone else, including court staff, and proceeded with the trial.

**{26}** Defendant never requested a mistrial but, citing *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), contends that the trial court nevertheless should have declared a mistrial on its own motion. Because this issue was not raised with the trial court, we review Defendant's claim for fundamental error. *See State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 ("When the trial court had no opportunity to rule on a [claimed error] because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error.").

**{27}** "The doctrine of fundamental error, embodied in Rule 12-216(B)(2)[ NMRA], is an exception to the general rule requiring preservation of error." *State v. Cunningham*, 2000-NMSC-009, ¶ 10, 128 N.M. 711, 998 P.2d 176. "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942). "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066 (citing *State v. Aguilar*, 117 N.M. 501, 507, 873 P.2d 247, 253 (1994)).

**{28}** Courts rarely grant a motion for mistrial based on mere equivocal evidence of possible juror bias or prejudice, even with the potential to negatively impact a trial. *See Case*, 100 N.M. at 719-20, 676 P.2d at 246-47 (deciding that trial court did not err in finding that equivocal evidence was insufficient to justify a mistrial for juror misconduct where third party allegedly overheard statements by jurors during a recess indicating that the defendant was going to be found guilty); *Price*, 104 N.M. at 708, 726 P.2d at 857 (holding that trial court's curative instruction was sufficient and mistrial was not indicated after a juror interrupted the State's cross-examination of the defendant to ask if it was safe to allow the defendant to be within proximity of a weapon); *Gardner*, 2003-NMCA-107, ¶ 9 (trial court sufficiently protected defendant's right to fair trial by dismissing a juror for cause after juror made inappropriate comment about the defendant's guilt, without conducting voir dire of the remaining jurors or offering curative instructions).

**{29}** We recognize that trial courts have considerable discretion and a variety of remedies to address allegations of juror bias, including individual voir dire, curative instructions, and if necessary dismissal of an affected juror for cause. As an initial matter, the comments made by these two jurors are not necessarily indicative of bias or prejudice. Rather than suggesting an opinion about Defendant's guilt or innocence, the State proposes that the inquiry may have been nothing more than an attempt by the jurors to determine their schedules for the following week. Nevertheless, the trial court correctly undertook the necessary steps to determine whether bias or prejudice existed in the minds of the jurors by

first conducting a voir dire of the entire jury and then by offering a curative instruction. Because the jurors indicated that they had not formed preconceived ideas about Defendant's guilt, the trial judge reasonably declined to take the additional step of dismissing individual jurors or declaring a mistrial. We think that the trial court's actions in this case were measured and appropriate in light of controlling case law. Accordingly, we find no fundamental error.

**Additional Questions**

**A.       Sufficiency of the Evidence to Sustain the Convictions.**

**{30}**    Defendant next argues for reversal on the basis that the evidence presented at trial is insufficient to support his convictions. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "'The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**{31}**    In this case, Defendant fails to identify any specific element or offense that is allegedly unsupported by substantial evidence. Defendant unreasonably asks this Court to perform a blanket review of each element of every offense for which he was convicted, and without pointing to evidence on the record, Defendant is essentially asking this Court to re-weigh the evidence against him. Neither role is appropriate for an appellate court on direct appeal. *See State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 ("The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict.").

**{32}**    Moreover, there is substantial evidence in support of the jury's verdict. At trial, four police officers positively identified Defendant as the man they observed on the night of the murder. Additional circumstantial evidence linked Defendant's presence in the area to the murder. The officers saw Defendant jump over the wall enclosing the Hogan's gated neighborhood and later found two duffel bags near the location where Defendant was first spotted; the bags contained personal items belonging to the Hogans and items used in the attack. The officers also observed that Defendant had a fresh cut on his cheek. After initially cooperating with the police officers, Defendant evaded arrest and fled to Mexico. The prosecution also established motive, based on Jim Hogan's false accusation regarding the missing watch. We conclude that the evidence of record is sufficient to support Defendant's convictions.

**{33}**    As additional support for his insufficient evidence claim, Defendant raises allegations of possible bias and tampering with the evidence against him. However, we recall that

"[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We conclude that substantial evidence exists to support the jury's verdict of guilt beyond a reasonable doubt.

## B.    Ineffective Assistance of Counsel

**{34}**    To prevail on this claim, "[D]efendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (citing *Strickland v. Washington*, 466 U.S. 668, 690, 692 (1984)). "Although the assistance provided by trial counsel is presumptively adequate, an attorney's conduct must not fall below that of a reasonably competent attorney." *State v. Holly*, 2009-NMSC-004, ¶ 36, 145 N.M. 513, 201 P.3d 844. A defendant must demonstrate that counsel's errors were so serious that the result of the proceeding would have been different. *State v. Schoonmaker*, 2008-NMSC-010, ¶ 32, 143 N.M. 373, 176 P.3d 1105.

**{35}**    Defendant claims that his trial counsel erred by failing to "present a defense by investigating and challenging evidence and by raising various and sundry issues." However, Defendant has not suggested that, but for his attorney's error, the outcome of his trial would have been different. Although Defendant has failed to establish a claim of ineffective assistance of counsel, we reach this conclusion without prejudice to Defendant's pursuit of habeas corpus proceedings on this issue and the development of a factual record. *See State v. Gonzales*, 2007-NMSC-059, ¶ 16, 143 N.M. 25, 172 P.3d 162.

## C.    Pro Se Motion to Dismiss

**{36}**    Defendant asks this Court to consider whether the trial court erred in denying his pro se motion to dismiss for failure to comply with Rule 5-604 NMRA, regarding the time of commencement of trial. In this case, this Court granted three stipulated extensions pursuant to Rule 5-604. Defendant argues that he was never made aware of, and had not personally consented to any extensions. However, both the prosecutor and defense counsel consented to the extensions in an effort to adequately prepare for trial.

**{37}**    Defense counsel characterized Defendant's motion as an assertion of his right to a speedy trial, and the trial court evaluated Defendant's claim under the four-factor test set forth in *State v. Coffin*, 1999-NMSC-038, ¶ 55, 128 N.M. 192, 991 P.2d 477 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972) (balancing (1) the length of delay, (2) the reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant)). The trial court ultimately concluded that the *Barker* factors did not weigh in favor of dismissal and denied Defendant's motion.

**{38}**    A district court weighing the four speedy-trial factors must make both factual determinations and legal conclusions. "When reviewing a district court's denial of a motion to dismiss on speedy trial grounds, we give deference to the court's factual findings." *State*

10

*v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254.  In this case, Defendant has not presented any factual evidence or legal authority to contradict the district court's denial of his pro se motion to dismiss based upon an alleged violation of his speedy trial rights.  Accordingly, without more, we have no basis to find that Defendant's right to a speedy trial was violated, and conclude that the trial court did not err in denying Defendant's pro se motion.

## D.    Actual Innocence

**{39}**    Defendant asks that his convictions be overturned based on a claim of actual innocence.  We have recognized that freestanding claims of actual innocence may be raised in habeas corpus proceedings based on the discovery or availability of new evidence.  *See Montoya v. Ulibarri*, 2007-NMSC-035, ¶ 30, 142 N.M. 89, 163 P.3d 476 ("[A] petitioner asserting a freestanding claim of innocence must convince the court by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence.").  However, because a claim of actual innocence is predicated on new evidence, and would therefore ask an appellate court to look beyond the trial record, such claims may not be appropriate on direct appeal.  Without deciding this issue, we decline consideration of Defendant's claim because he has not presented *any* evidence or otherwise demonstrated that he is actually innocent and that "no reasonable juror would have convicted him."  *Id.*

## CONCLUSION

**{40}**    For the reasons stated in this opinion, we affirm.

**{41}    IT IS SO ORDERED**.


_____

RICHARD C. BOSSON, Justice

**WE CONCUR:**


_____

**EDWARD L. CHÁVEZ, Chief Justice**


_____

**PATRICIO M. SERNA, Justice**


_____

**PETRA JIMENEZ MAES, Justice**

**Topic Index for *State v. Gallegos*, No. 30,453**

**Criminal Law**

11

CL-KP     Kidnapping

**Criminal Procedure**

CA-EO     Elements of Offense
CA-GJ     Grand Jury
CA-IN      Indictment
CA-JI      Jury Instructions

**Evidence**

EV-HR     Hearsay Evidence

**Juries**

JR-IJ      Impartial Jury
JR-IC      Improper Juror Communication
JR-PJ      Propriety of Juror Conduct

**Jury Instructions**

JI-CJ      Criminal Jury Instructions