# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>November 19, 2014</u>

**NO. 32,995**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ARLENE GARNENEZ,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Louis E. DePauli, Jr., District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

{1}     Arlene Garnenez (Defendant) appeals from her convictions for two counts of vehicular homicide, contrary to NMSA 1978, § 66-8-101 (2004). This case presents the issue of whether a blood draw can proceed solely pursuant to a valid search warrant, outside of the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007). We hold that it can. We also address Defendant's other contentions that (1) her blood alcohol content (BAC) results should have been suppressed as a result of false statements in the search warrant authorizing the blood draw; (2) comments made by the prosecutor during jury selection and an emotional reaction from a member of the courtroom audience prejudiced the jury and warranted a mistrial; and (3) the district court improperly admitted the BAC results and expert testimony regarding retrograde extrapolation without adequate foundation and in violation of her rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. For the following reasons, we affirm Defendant's convictions.

**BACKGROUND**

{2}     On July 23, 2011, between 8:00 a.m. and 8:30 a.m., Defendant was driving a pickup truck on I-40 in Gallup, New Mexico. The truck veered off the road, struck

a light pole, and rolled over multiple times, resulting in the deaths of two passengers. Defendant was bleeding heavily from a head wound and her right arm was fractured. She was taken to the hospital for treatment. Officer Andy Yearley, of the Gallup Police Department, responded to the scene and first spoke with Defendant at the hospital. Even after Defendant had been transported to the hospital, Officer Yearley still detected a slight odor of alcohol and noted that Defendant had a flushed complexion and confused speech. Officer Yearley did not arrest Defendant or read her the Implied Consent Act. Although Defendant was able to speak with him, Officer Yearley questioned her ability to give consent because she appeared to be in pain from her injuries and he was not sure if the medications in her system affected her judgment. *See generally* §§ 66-8-105 to -112. Under these circumstances, Officer Yearley decided not to arrest Defendant or presume that she was incapable of withdrawing consent pursuant to Section 66-8-108. He instead sought and obtained a search warrant to draw Defendant's blood. Defendant was not formally arrested until after the blood draw and after she was discharged from the hospital.

{3}      Following a jury trial, Defendant was convicted of two counts of vehicular homicide and one count of driving while under the influence of intoxicating liquor or drugs (DWI), impaired to the slightest degree. Defendant's DWI conviction was

2

vacated on double jeopardy grounds. We discuss pertinent facts in more detail below as they relate to the issues.

**DISCUSSION**

**I.     Blood May Be Properly Drawn Pursuant to a Search Warrant, Without an Arrest Under the Implied Consent Act**

{4}     Defendant contends that the district court should not have allowed the BAC results into evidence because she was not arrested at the time of the blood draw. Defendant argues that even though a search warrant was obtained, the statutory framework of the Implied Consent Act, by requiring an arrest prior to a blood draw, mandates the exclusion of all BAC results taken when a person was not under arrest. We disagree, and for the reasons discussed below, we hold that a constitutionally permissible search of a person's blood may arise either from an arrest pursuant to the Implied Consent Act or a valid search warrant supported by probable cause.

{5}     Fourth Amendment jurisprudence has expressed a preference for searches conducted pursuant to a warrant in the context of blood draws. *See generally Schmerber v. California*, 384 U.S. 757, 767, 770 (1966) (stating that the "compulsory administration of a blood test . . . plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment[,]" and also explaining that because "[s]earch warrants are ordinarily required for searches of dwellings, . . . absent an emergency, no less could be required where intrusions into the human body are

3

concerned"). Consent and arrest are exceptions to the warrant requirement. *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025 (listing the recognized exceptions to the warrant requirement as "exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view"). The Implied Consent Act operates as one form of statutory consent, created by the Legislature, by allowing law enforcement officers to presume that all drivers, upon arrest for DWI, have agreed to take a chemical test. *In re Suazo*, 1994-NMSC-070, ¶ 7, 117 N.M. 785, 877 P.2d 1088 ("The essence of the [Implied Consent] Act is that any person who operates a motor vehicle in New Mexico, after being arrested for driving while intoxicated, 'shall be deemed to have given consent' to a chemical test to determine the drug or alcoholic content of the motorist's blood." (quoting § 66-8-107(A)).

{6}    We acknowledge that our prior case law emphasized the importance of an arrest prior to the application of the Implied Consent Act and gave little effect to a search warrant. In *State v. Steele*, we held that where a driver refused to provide a blood sample under the Implied Consent Act, a law enforcement officer could not obtain the sample using a search warrant because the Implied Consent Act afforded the defendant greater protection than the Fourth Amendment. 1979-NMCA-113, ¶¶ 7-9, 93 N.M. 470, 601 P.2d 440; *see also State v. Chavez*, 1981-NMCA-060,

4

¶ 4, 96 N.M. 313, 629 P.2d 1242 (explaining that in *Steele*, "[t]his Court held that the Legislature gave the defendant more protection than was afforded by the Constitution and that, after his refusal, the result of the blood alcohol test taken by means of a valid search warrant was properly excluded"). However, the Legislature subsequently amended the Implied Consent Act to allow law enforcement officers to obtain a blood sample using a search warrant upon a defendant's refusal. *Chavez*, 1981-NMCA-060, ¶ 4.

{7}     Our subsequent case law indicates that we have construed the Legislature's amendment broadly. In *State v. House*, we held that an affidavit for a search warrant authorizing a blood draw did not need to state that a defendant was arrested and only needed to show probable cause:

> [W]e are unaware of any requirement that the affidavit for a search warrant authorizing a chemical test of a driver's blood include a statement that the driver was arrested for DWI. NMSA 1978, Section 66-8-111(A) (Repl. Pamp. 1994) (search warrant authorizing chemical tests) only requires a finding, based on the affidavit for search warrant, that there is probable cause to believe that: the person has driven a motor vehicle while under the influence of alcohol, thereby causing the death or great bodily injury of another person; or the person has committed a felony while under the influence of alcohol and that chemical tests will produce material evidence in a felony prosecution.

*House*, 1996-NMCA-052, ¶ 32, 121 N.M. 784, 918 P.2d 370.

{8}     Additionally, we have held that where probable cause exists, refusal under the Implied Consent Act is not required before an officer may obtain a search warrant for

5

a blood test. *State v. Duquette*, 2000-NMCA-006, ¶ 20, 128 N.M. 530, 994 P.2d 776 ("Based on our reading of the language in Section 66-8-111(A), we do not believe that a refusal is a condition precedent to issuance of a search warrant when, as here, there exists probable cause to believe [the d]efendant committed a felony while under the influence of alcohol."). We do not, therefore, read our Implied Consent Act to prohibit an officer from obtaining a blood sample using a search warrant supported by probable cause.

{9} The purpose of the Implied Consent Act is to assist law enforcement officers in finding and removing intoxicated drivers from the roadways. *Duquette*, 2000-NMCA-006, ¶ 20. Because Defendant had been removed from the highway, was hospitalized, and was receiving medication for her injuries, Officer Yearley decided not to arrest Defendant or presume consent pursuant to the Implied Consent Act. He instead sought and obtained a search warrant, which, for reasons set forth in the next section, established probable cause. In light of our preference for a search warrant under the Fourth Amendment and our case law interpreting the Implied Consent Act, we conclude that the valid search warrant was a permissible alternative to proceeding under the Implied Consent Act in order to perform a blood draw.

{10} In addition to arguing that the BAC results should have been excluded because the blood draw was not preceded by an arrest under the Implied Consent Act,

6

Defendant also contends that "the State made no attempt to qualify Officer Yearley as a 'responsible person' who could 'authenticate' the samples[,]" as required by 7.33.2.15(A)(1) NMAC ("Blood samples shall be collected in the presence of the arresting officer or other responsible person who can authenticate the samples."). However, Defendant conceded to the district court that Officer Yearley fit the definition of a "responsible person" who could authenticate the samples. We do not address Defendant's unpreserved contentions, and Defendant does not point us to any exceptions to this rule. *See State v. Jason F.*, 1998-NMSC-010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (declining to review a party's unpreserved argument when counsel made no argument on appeal regarding the exceptions to the preservation requirement).

{11} Finally, Defendant argues that her BAC results should have been excluded because the test was not performed within three hours of arrest, as required by 7.33.2.15(A)(2) NMAC. We note that this regulation has been superseded by statute. Section 66-8-110(E) ("If the test performed pursuant to the Implied Consent Act is administered more than three hours after the person was driving a vehicle, the test result may be introduced as evidence of the alcohol concentration in the person's blood or breath at the time of the test and the trier of fact shall determine what weight to give the test result."). Any time lapse impacts the weight of the evidence, not

admissibility. *See State v. Bowden*, 2010-NMCA-070, ¶¶ 8-12, 148 N.M. 850, 242 P.3d 417 (holding that where a statute and regulation conflict, the statute generally prevails, and also explaining that Section 66-8-110(E) permits test results taken more than three hours after the person was driving to be admitted into evidence and gives the fact finder the discretion to give appropriate weight to the results).

**II.      Validity of the Search Warrant**

{12}      Next, Defendant argues that the district court should have suppressed the BAC results because the affidavit in support of the search warrant contained a false statement that Defendant was under arrest. At the hearing on Defendant's motion to suppress, Officer Yearley testified that contrary to what was stated in the affidavit, he did not arrest Defendant. He used a standard form affidavit and did not remove the stock language that Defendant was under arrest. He also testified that he did not intend to mislead the issuing judge by the mistaken inclusion of this language.

{13}      "We review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785. Findings of fact are reviewed to determine if they are supported by substantial evidence, a determination of whether the evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]"

8

*State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). The application of law to fact is a legal determination, which we review de novo. *See State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57.

{14}     "[T]o suppress evidence based on alleged falsehoods and omissions in a search warrant affidavit, the defendant must show either 'deliberate falsehood,' or 'reckless disregard for the truth,' as to a material fact. A merely material misrepresentation or omission is insufficient." *State v. Fernandez*, 1999-NMCA-128, ¶ 34, 128 N.M. 111, 990 P.2d 224. The district court, in its written ruling on Defendant's motion to suppress, found that Officer Yearley's misstatement was negligent, but not deliberate or reckless. "[T]he district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Deferring to the district court's assessment of the officer's intent, we conclude that the district court properly upheld the search warrant.

{15}     With the exception of Defendant's arguments suggesting that the affidavit was tainted by the officer's false statement, Defendant does not otherwise challenge the facial validity of the affidavit to establish probable cause. We will not address arguments on appeal that were not raised in the brief in chief and have not been properly developed for review. *See State v. Garcia*, 2013-NMCA-005, ¶ 9, 294 P.3d

1256 (stating that we do not review arguments not raised in the brief in chief); *cf. Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that we do not review undeveloped or unclear arguments on appeal).

{16} Finally, we note that Defendant cites to Article II, Section 10 of the New Mexico Constitution. We do not address this issue, however, because Defendant does not assert that Article II, Section 10 affords her greater protection in this context. *See State v. Hubble*, 2009-NMSC-014, ¶ 6, 146 N.M. 70, 206 P.3d 579 (addressing only the Fourth Amendment where the defendant failed to assert that the state Constitution afforded him greater protection).

**III. Denial of Defendant's Motions for Mistrial Did Not Constitute an Abuse of Discretion**

**A. Allegations of Juror Prejudice**

{17} First, Defendant asserts that the prosecutor impermissibly tainted the venire by telling the potential jurors that "Defendant . . . and her National Guardsman friends were 'sitting around drinking until the wee hours of the morning.' " Defendant argues that telling potential jurors, prior to trial, that Defendant "[was] on trial for driving while intoxicated and has caused the death of members of that community" was sufficiently prejudicial to warrant a mistrial. The State counters, first, that the district court properly told the venire of the charges Defendant was facing, and second, that the prosecutor's question was phrased as a hypothetical and fairly inquired as to

10

potential prejudices against drinking.

{18} In denying Defendant's motion for a mistrial, the district court ruled that the prejudice alleged by Defendant was purely speculative. Although some members of the venire indicated a bias against those charged with alcohol-related offenses, the district court concluded that the bias of a few potential jurors would not preclude its ability to empanel a jury comprised of members who could be fair and impartial. "We apply an abuse of discretion standard of review to the district court's determination of how voir dire should be conducted, because assuring the selection of an impartial jury may require that counsel be allowed considerable latitude in questioning prospective jury members." *State v. Johnson*, 2010-NMSC-016, ¶ 34, 148 N.M. 50, 229 P.3d 523 (alteration, internal quotation marks, and citation omitted). The district court is in the best position to evaluate counsel's questions to the venire and determine to what extent any resulting prejudice would impact the defendant's right to a fair and impartial jury. *Id.*

{19} Pursuant to UJI 14-120 NMRA, the district court properly told the venire about the crimes that Defendant was charged with: two counts of vehicular homicide, one count of great bodily harm by vehicle, and one count of driving while under the influence of intoxicating liquor or drugs. The fact that the charges against Defendant could, potentially, create bias in a juror's mind did not give rise to the level of

11

prejudice required for a mistrial. *See State v. Gallegos*, 2009-NMSC-017, ¶ 28, 146 N.M. 88, 206 P.3d 993 (stating that "[c]ourts rarely grant a motion for mistrial based on mere equivocal evidence of possible juror bias or prejudice, even with the potential to negatively impact a trial").

{20} Additionally, we note that our review of the record comports with the State's recitation of the facts and indicates that the prosecutor phrased the questions in hypothetical form. The prosecutor first asked the venire: "So, if the evidence were to show that some people were sitting around drinking for a few hours and that right after they left, they had an accident, or a crash, would that affect your ability to give us a fair verdict?" The prosecutor later inquired: "If the evidence in this case were to show that all of the principals in this case had been sitting around drinking into the wee hours of the morning, would that affect your ability to give us a fair and impartial verdict?"

{21} The State and Defendant were permitted to inquire about any potential prejudices from the jury pool against alcohol and DWI, both as a group and individually. *See* UJI 14-120, Use Note 4(c) (explaining that voir dire questioning is one source of information to be used by the district court when selecting a jury, such "questioning by the attorneys is generally used for inquiry concerning the jurors' attitudes and opinions about case-related issues (*for example, burden of proof, self*

12

*defense, alcohol use, etc.*)"; *Sutherlin v. Fenenga*, 1991-NMCA-011, ¶ 36, 111 N.M. 767, 810 P.2d 353 ("The purpose of voir dire is to enable the parties to determine whether there is any bias or prejudice on the part of prospective jurors and to enable counsel to intelligently exercise challenges.").

{22}     Defendant specifically references potential jurors 7, 9, 20, 41, 43, 65, and 84 as those who expressed concerns about the facts of the case. None of these individuals were ultimately empaneled: five were excused for cause because they stated they could not be fair and impartial, one was stricken by the defense using a peremptory challenge, and one was not selected. *See State v. Rackley*, 2000-NMCA-027, ¶ 9, 128 N.M. 761, 998 P.2d 1212 (explaining that "[t]he jury selection process, including the excusal of jurors for cause, insures that a defendant is tried before an impartial jury").

{23}     Finally, Defendant had two remaining peremptory challenges at the conclusion of jury selection and has not offered an explanation as to why she did not exercise those challenges. *See State v. Isiah*, 1989-NMSC-063, ¶ 29, 109 N.M. 21, 781 P.2d 293 (holding that where a defendant does not use all of his or her peremptory challenges, the defendant may not complain of "prejudice for failure to dismiss prospective jurors"), *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071.

{24} Because Defendant has not pointed us to any specific instances of prejudice in the empaneled jurors, we conclude that the prosecutor's questioning during voir dire did not deprive Defendant of her right to a fair and impartial jury. *See Johnson*, 2010-NMSC-016, ¶ 36 (concluding that where there was no showing that the prosecutor's questions prejudiced the jury, and "[t]he district court did not abuse its discretion by permitting the use of hypotheticals during the voir dire in a way that resulted in prejudice to [the d]efendant"). The district court did not abuse its discretion in denying Defendant's motion for mistrial. *See Sutherlin*, 1991-NMCA-011, ¶ 36 (stating that the district court "is invested with broad discretion over the scope of voir dire"); *Gallegos*, 2009-NMSC-017, ¶ 22 (observing that "[a] mistrial generally should be granted only when bias is fixed in the minds of the jurors so as to preclude a fair and objective verdict" (internal quotation marks and citation omitted)).

**B.      Emotional Courtroom Outburst**

{25} Second, Defendant asserts that the jury was impermissibly prejudiced when a member of the courtroom audience began crying during a witness' testimony about one of the victim's injuries. The district court asked the witness to pause her testimony and requested that the audience member be escorted out of the courtroom. Defendant moved for a mistrial on the grounds that the jury was precluded from rendering an impartial verdict following the outburst. The district court denied

14

Defendant's motion.

{26} Defendant has failed to provide authority for the proposition that reactions within the courtroom gallery to upsetting testimony during trial warrant a mistrial because these reactions prevent the jury from being fair and impartial. *Cf. In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority."). Nonetheless, the jury was instructed that "[n]either sympathy nor prejudice should influence your verdict." *See State v. Perry*, 2009-NMCA-052, ¶ 45, 146 N.M. 208, 207 P.3d 1185 (explaining that "[t]here is a presumption that the jury follows the instructions they are given" (internal quotation marks and citation omitted)). Indulging our appellate "presumption of regularity" of the proceedings below, *State v. Pacheco*, 2007-NMSC-009, ¶ 26, 141 N.M. 340, 155 P.3d 745, we find no abuse of discretion in the district court's denial of Defendant's motion for a mistrial.

**IV.    Challenges to the Admission of BAC Results and Expert Testimony**

{27} We understand Defendant to make three arguments challenging the admission of her BAC results at trial: first, that the lab analyst, Hannah Nelson, testified about the BAC results before an adequate foundation was laid for the admission of the exhibits showing the results themselves; second, that Defendant was prejudiced by

the fact that the jury heard the BAC results even though the district court permitted a jury instruction only on the theory of impairment to the slightest degree; and third, that expert testimony from Dr. Hwang about retrograde extrapolation improperly relied on the BAC results.

{28} At trial, the district court permitted a jury instruction only on the "impaired to the slightest degree" theory of DWI, due to the charging language in the criminal information. Based upon the theory of the DWI charge, Defendant argues that the State should not have been allowed to present the BAC results and expert testimony about retrograde extrapolation as evidence of impairment.

{29} We review the district court's evidentiary rulings for an abuse of discretion. *State v. McGhee*, 1985-NMSC-047, ¶ 24, 103 N.M. 100, 703 P.2d 877. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Thompson*, 2009-NMCA-076, ¶ 11, 146 N.M. 663, 213 P.3d 813 (internal quotation marks and citation omitted).

**A.    The District Court Did Not Abuse Its Discretion by Permitting Hannah Nelson to Testify Prior to Officer Yearley**

{30} First, Defendant contends that she was prejudiced because Ms. Nelson, the laboratory analyst at the Scientific Laboratory Division (SLD), testified about the BAC results before the exhibits showing the results were admitted. We disagree.

{31} Due to logistical issues, the State called Ms. Nelson prior to calling Officer

16

Yearley, who personally observed the blood draw. The State acknowledged that it would need to lay the proper foundation for admission of the exhibits through Officer Yearley's forthcoming testimony. "[I]t is within the [district] court's discretion to control the order of witnesses, mode of interrogating witnesses, and presentation of evidence." *State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. Additionally, Rule 11-104(B) NMRA permits evidence to be conditionally admitted at trial, contingent upon a subsequent showing of relevancy. *See also Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 19, 106 N.M. 492, 745 P.2d 717 ("When an exhibit is admitted conditionally, it is the duty of the party seeking to exclude the exhibit to renew its objection and to move to strike if its relevancy is not thereafter established.").

{32}    After Ms. Nelson's testimony, Officer Yearley testified that he personally observed two nurses perform each of the blood draws using the items in the SLD-provided kit. This testimony provided an adequate foundation. *See State v. Nez*, 2010-NMCA-092, ¶¶ 13-14, 148 N.M. 914, 242 P.3d 481 (describing testimony from a law enforcement officer about his personal observation of a nurse performing a defendant's blood draw as providing an adequate foundation for the admission of the blood draw report). As a result, no foundational error occurred by allowing the testimony of these two witnesses to be presented out of sequence.

**B.    The District Court Did Not Abuse Its Discretion in Admitting Evidence of BAC Results and Expert Testimony About Retrograde Extrapolation When the Jury Was Instructed Only on an Impaired to the Slightest Degree Theory**

{33}    We turn next to Defendant's assertion that she was prejudiced by the admission of the BAC results because the jury was instructed only on an impaired to the slightest degree theory. The district court did not instruct the jury on the theory of per se DWI, due to the charging language in the criminal information, but permitted into evidence the BAC results and expert testimony about retrograde extrapolation. Defendant contends that:

> [t]he prejudicial effect and confusion created by the availability of the blood results to the jury throughout the trial after Ms. Nelson's testimony makes it impossible to determine whether the jury based its guilty verdict on 'impairment to the slightest degree' or incorporated the blood results in its collective deliberations and verdict.

{34}    Defendant cites no authority in support of her contention. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2 (addressing the lack of relevant authority in appellate briefs to indicate the absence of supporting case law). We have previously held that BAC results are relevant under the implied to the slightest degree theory to show "that [a d]efendant had alcohol in his [or her] system and, regardless of the numerical BAC, tended to show that [the d]efendant's poor driving . . . was a result of drinking liquor." *State v. Pickett*, 2009-NMCA-077, ¶ 12, 146 N.M. 655, 213 P.3d 805 (internal quotation marks omitted); *see also State v. Montoya*, 2005-NMCA-

18

078, ¶ 21, 137 N.M. 713, 114 P.3d 393 (explaining that, where the defendant was charged with vehicular homicide, evidence of alcohol in the defendant's system four hours after the accident was relevant). The jury "was entitled to consider the BAC results insofar as they were relevant as evidence of alcohol in [the d]efendant's system that would indicate that [the d]efendant's poor driving was due to his [or her] consumption of liquor." *Pickett*, 2009-NMCA-077, ¶ 14.

{35}     Additionally, the fact that scientific retrograde extrapolation evidence was presented diminished the risk that the jury considered the BAC results in an inappropriate and prejudicial manner. *Cf. id.* ¶¶ 8-15 (holding that even though the state did not provide expert testimony about retrograde extrapolation, the district court in a bench trial was entitled to consider BAC results as evidence of the presence of alcohol in the defendant's system under an impaired to the slightest degree theory). Affording deference to the district court's evidentiary ruling, we hold that there was no abuse of discretion.

**C.     The District Court Did Not Abuse Its Discretion in Admitting Expert Testimony About Retrograde Extrapolation**

{36}     Third, Defendant argues that Dr. Hwang's expert testimony about retrograde extrapolation should have been excluded. Defendant asserts that Dr. Hwang's testimony improperly relied on the BAC results, and having previously determined that the BAC results were properly admitted, we conclude that such reliance went to

19

the weight of his testimony. *See State v. Gonzales*, 2001-NMCA-025, ¶ 40, 130 N.M. 341, 24 P.3d 776 ("We recognize that the fact[ ]finder is entitled to disregard evidence presented by either party, . . . and to disregard the testimony of experts[.]"), *overruled on other grounds by State v. Rudy B.*, 2009-NMCA-104, 147 N.M. 45, 216 P.3d 810.

**D.     The Confrontation Clause Did Not Require Live Testimony Concerning the Blood Draw**

{37}     To the extent Defendant contends that live testimony from the nurses who performed Defendant's blood draw was needed to satisfy the requirements of the Confrontation Clause, we disagree. *See Nez*, 2010-NMCA-092, ¶ 16 ("[T]he absence of the blood drawer from trial and opportunity for a defendant to cross-examine the blood drawer relating to chain of custody does not provide grounds for a confrontation objection to the admissibility of a blood[ ]alcohol report.").

**CONCLUSION**

{38}     For the foregoing reasons, we affirm Defendant's convictions for two counts of vehicular homicide, contrary to Section 66-8-101.

{39}     **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**