Certiorari Denied, September 15, 2010, Docket No. 32,559

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-092**

**Filing Date:  July 20, 2010**

**Docket No. 26,811**

**STATE OF NEW MEXICO,**

>   **Plaintiff-Appellee,**

**v.**

**PHILBERT NEZ,**

>   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Stephanie Erin Brunson, Assistant Appellate Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**     This case comes to us on remand from our Supreme Court in *State v. Nez*, No. 31,703 for further consideration in light of *State v. Bullcoming*, 2010-NMSC-007, 147 N.M. 487, 226 P.3d 1, and *State v. Aragon*, 2010-NMSC-008, 147 N.M. 474, 225 P.3d 1280. *See* Order

1

of Remand and Mandate, *State v. Nez*, No. 31,703, entered March 2, 2010. We note at the outset that *Bullcoming* overruled one aspect of the decision in *State v. Dedman*, 2004-NMSC-037, 136 N.M. 561, 102 P.3d 628, as we discuss in more detail later in this opinion. In this Court's memorandum opinion filed in the present case on April 20, 2009, which was the subject of the certiorari proceeding in the Supreme Court from which the foregoing remand emanated, we upheld the admission of a blood-alcohol-content (BAC) report based on the precedent set in *Dedman*. *State v. Nez*, No. 26,811, slip op. at 23-27 (Ct. App. Apr. 20, 2009). We address on remand whether *Bullcoming* or *Aragon* change our conclusion in the memorandum opinion that the district court did not err by admitting the report into evidence.

**{2}**      To set the stage, we first discuss *Dedman*, and we then discuss Defendant's arguments on appeal in the present case and the decision contained in our memorandum opinion. Following that, we discuss *Bullcoming* (and only touch on *Aragon*), which necessarily includes discussion of *Melendez-Diaz v. Massachusetts*, ___ U.S. __, 129 S. Ct. 2527 (2009). We then return to the present case, focusing on Defendant's arguments and the evidence specifically on the issue at hand, namely whether the district court abused its discretion in admitting the BAC report where, Defendant argued, the State failed to present non-hearsay testimony sufficient to establish the method used to draw his blood and the qualifications of the blood drawer. We conclude our discussion with our holding that neither *Bullcoming* nor *Aragon* overruled *Dedman* on this particular issue and that, under *Dedman*, as well as under *Bullcoming*, under the facts in the present case the report was properly admitted into evidence. We also discuss Defendant's argument that his Sixth Amendment confrontation right was denied because he did not have an opportunity to cross-examine the person who drew his blood. We conclude that Defendant's confrontation right was not violated by the absence of the blood drawer from trial.

*Dedman*

**{3}**      In *Dedman*, the prosecution contended that a veni-puncture method used to draw a blood sample ultimately tested for BAC "did not affect the admissibility of the blood alcohol report" and also that the unavailability of the nurse who drew the blood sample to testify at trial did not require the exclusion of the report on Sixth Amendment confrontation grounds. 2004-NMSC-037, ¶ 1. The Court determined that the failure to comply with a regulation setting out the veni-puncture requirement did not render the test results wholly unreliable and did not justify exclusion of the report. *Id.* ¶ 21. The Court also determined that the report qualified as a public record, that the report was prepared in a non-adversarial setting and was not investigative or prosecutorial, and that the report was admissible under the public record exception to the hearsay rule. *Id.* ¶ 24. Noting that the right of confrontation required "an independent inquiry that is not satisfied by a determination that evidence is admissible under a hearsay exception," *id.* ¶ 25, the Court explored whether the defendant's confrontation right was violated. *Id.* ¶¶ 26-36. The Court held that the report was not testimonial evidence under *Crawford v. Washington*, 541 U.S. 36 (2004). *Dedman*, 2004-NMSC-037, ¶ 30. The Court also held that the testimony of the toxicologist who prepared the report and of the officer in whose presence the blood was drawn "provided sufficient foundation for [the] admission of the report and that [the] lack of opportunity to cross-

2

examine the nurse who drew the sample did not violate [the d]efendant's confrontation rights." *Id*. ¶¶ 1, 30, 45.

**Defendant's Arguments on Appeal and Our Memorandum Opinion**

**{4}**     In the present case, Defendant argued on appeal that the district court erred in admitting a report that contained the results of a test of a sample of his blood in that the State failed to show that the blood was properly drawn under the Implied Consent Act and Department of Health regulations by a qualified person. *Nez*, No. 26,811, slip op. at 23. Defendant further argued that the report constituted impermissible hearsay that violated the Confrontation Clause because the drawer of the blood was not present at trial and Defendant did not have an opportunity to cross-examine that person about her qualifications and the manner in which the blood sample was taken. *Id.* We noted in our memorandum opinion that, in *Dedman*, our Supreme Court held that the absence of the blood drawer from trial and the lack of testimony from the blood drawer as to the method in which he or she drew the blood did not affect the admissibility of the report. *Nez*, No. 26,811, slip op. at 24; *see Dedman*, 2004-NMSC-037, ¶¶ 4-5.  We also noted that our Supreme Court had implicitly rejected an argument such as Defendant is making in the present case, that Defendant's challenges were controlled by *Dedman*, and that we were bound to follow *Dedman*. *Nez*, No. 26,811, slip op. at 24; *see Dedman*, 2004-NMSC-037, ¶ 21.  We further noted that in *Dedman* the Court held that the report was admissible under the public records exception to the hearsay prohibition and did not constitute testimonial evidence, and we concluded, "[a]s did the *Dedman* Court, . . . that Defendant's right of confrontation provided no basis for exclusion of the . . . report." *Nez*, No. 26,811, slip op. at 27 (internal quotation marks and citation omitted); *see Dedman*, 2004-NMSC-037, ¶¶ 24, 30, 45.

***Bullcoming* and *Melendez-Diaz***

**{5}**     Based on *Melendez-Diaz*, in *Bullcoming* and *Aragon* our Supreme Court held that crime laboratory reports of blood-alcohol test results (*Bullcoming*) and chemical forensic reports of a substance determined to be methamphetamine (*Aragon*) were testimonial for the purposes of the Confrontation Clause. *Bullcoming*, 2010-NMSC-007, ¶¶ 1, 13-16, 18; *Aragon*, 2010-NMSC-008, ¶¶ 4, 6-9.  The question at hand was then whether a defendant's right to confrontation was violated when the prosecution admitted the reports through the testimony of an analyst who did not personally perform the testing or analysis required and performed to obtain the test results in the reports. *See Bullcoming*, 2010-NMSC-007, ¶¶ 1, 19-20; *Aragon*, 2010-NMSC-008, ¶¶ 23-33.  The two cases indicate that, under certain circumstances, an analyst who is not the testing analyst but who testifies under Rule 11-703 NMRA based upon the underlying data in a report and not on opinion or analysis of another analyst may testify in order to admit the report. *See Bullcoming*, 2010-NMSC-007, ¶¶ 23-25; *Aragon*, 2010-NMSC-008, ¶¶ 23-25.

**{6}**     For our purposes on remand, only *Bullcoming*, which overruled *Dedman*, is pertinent. *See Bullcoming*, 2010-NMSC-007, ¶¶ 1, 16.  In *Bullcoming*, the prosecution introduced a blood-alcohol report that contained chromatograph-machine-generated results of the defendant's BAC, and it also contained chain of custody information in part identifying the person who drew the blood and the date, time, and place of the blood draw. *Id.* ¶¶ 1, 6, 8,

3

21. The report was admitted through the testimony of an analyst of the State Laboratory Division (SLD) who was not the testing analyst. *Id.* ¶¶ 1, 6-9. The nurse who drew the blood and the officer who observed the blood draw and also prepared and sent the blood kit to SLD testified at trial and were available for cross-examination. *Id.* ¶ 8. The report was admitted in evidence pursuant to the business-records exception to the hearsay rule. *Id.* ¶ 9; *see* Rule 11-803(F), (H) NMRA. In analyzing the issue of the admissibility of the report, our Supreme Court in *Bullcoming* addressed *Melendez-Diaz*, which had been decided after *Dedman* and before *Bullcoming*. *Bullcoming*, 2010-NMSC-007, ¶¶ 13-20.

**{7}** In *Melendez-Diaz*, the prosecution submitted sworn certificates that the Court considered to be affidavits showing the results of forensic analysis establishing a substance's composition as cocaine. 129 S. Ct. at 2532; *Bullcoming*, 2010-NMSC-007, ¶ 13. The Court held the affidavits were testimonial under *Crawford*. *Melendez-Diaz*, 129 S. Ct. at 2532. Justice Scalia's opinion for the majority explained that, under *Crawford*, affidavits were a core class of testimonial statements subject to analysis under the Confrontation Clause, the analysts' sworn statements were affidavits, and, as such, the analyst affiants were witnesses for purposes of the Sixth Amendment and thus subject to confrontation. *Melendez-Diaz*, 129 S. Ct. at 2531-32; *Bullcoming*, 2010-NMSC-007, ¶ 13.

**{8}** Further, the Court in *Melendez-Diaz* stated that "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial." 129 S. Ct. at 2532 (internal quotation marks omitted). However, the Court did not extend its decision to encompass individuals who are merely involved in the chain of custody, stating, "we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Id.* at 2532 n.1; *Bullcoming*, 2010-NMSC-007, ¶ 21. The dissent in *Melendez-Diaz* noted and the majority agreed that the prosecution has the obligation to establish the chain of custody, but that did "not mean that everyone who laid hands on the evidence must be called." 129 S. Ct. at 2532 n.1, 2546 (Kennedy, J., dissenting); *Bullcoming*, 2010-NMSC-007, ¶ 21.

**{9}** Based on *Melendez-Diaz*, the Court in *Bullcoming* held that the blood-alcohol report in the case was testimonial and overruled *Dedman*'s holding that laboratory reports were non-testimonial. *Bullcoming*, 2010-NMSC-007, ¶¶ 12, 16, 18. The Court in *Bullcoming* nevertheless also held that the defendant's confrontation right was satisfied through cross-examination of the testifying analyst who was not the analyst who prepared the report because the report-preparing analyst had simply transcribed the results generated by the gas chromatograph machine to the report, had not exercised any independent judgment, and was nothing more than a "mere scrivener." *Id.* ¶ 19. The "true accuser," the Court stated, was not the analyst who transcribed the results into the report, but rather the machine that "detected the presence of alcohol in [the d]efendant's blood, assessed [the d]efendant's BAC, and generated a computer print-out listing its results." *Id.* Thus, the Court determined, "the live, in-court testimony of a separate qualified analyst [was] sufficient to fulfill a defendant's right to confrontation." *Id.*

4

**{10}** Recognizing that the report also contained information regarding chain of custody, the Court in *Bullcoming* referred to *Melendez-Diaz*'s footnote regarding chain of custody evidence and the confrontation right, and the Court in *Bullcoming* stated that *Melendez-Diaz* "indicated that chain of custody information may not be testimonial under the Confrontation Clause." *Bullcoming*, 2010-NMSC-007, ¶ 21; *see Melendez-Diaz*, 129 S. Ct. at 2532 n.1. The Court did not, however, pursue the *Melendez-Diaz* "indicated" chain of custody result further. Instead, because in *Bullcoming* the defendant had the opportunity to cross-examine the officer who arrested him and the nurse who drew his blood, and also because the record reflected that the defendant was willing to stipulate that the nurse drew the blood properly, the Court held that "[t]o the extent that [the d]efendant based his Confrontation Clause claim on the chain of custody information contained in [the report], it is clear that his objection was simply pro forma." 2010-NMSC-007, ¶ 22.

**Defendant's Arguments and the Evidence**

**{11}** In the present case, Defendant argued on appeal that our Supreme Court's *Dedman* decision "was premised on an unproven assumption, nowhere mentioned in the record proper of that case, *that it was in fact a nurse*, or another meeting [NMSA 1978, Section 66-8-103 (1978)]'s express requirements, who drew the defendant's blood on the occasion in question." Defendant noted that in cases prior to *Dedman* the Court had indulged in no such assumptions. Defendant argued that in the present case neither the officer nor the toxicologist who testified "was qualified to testify as to the *manner* in which the blood was drawn or to verify the accuracy with which the blood[ ]drawer obtained the blood sample." He argued further that "[t]here was no testimony regarding the identity of the blood[ ]drawer that was not hearsay and absolutely no testimony regarding the person's qualifications or whether the dual purposes of safety and reliability were met."

**{12}** In short, Defendant's position was that the State did not present any non-hearsay testimony sufficient to establish the method used to draw blood and the qualifications of the blood drawer and, therefore, the district court abused its discretion in admitting the report. More specifically, Defendant argued that the State failed to lay the necessary foundation to show compliance with Section 66-8-103 which reads, in part, that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." Defendant also argued that the State did not show as required by the law and regulations that the blood samples were collected "in the presence of the arresting officer or other responsible person who can authenticate the samples," and "within two hours of arrest" and not using "[e]thyl alcohol . . . as a skin antiseptic," and preserving the sample in "an SLD-approved blood collection kit [that contains] two or more sterile tubes with sufficient sodium fluoride so that the final concentration shall contain not less than 1.0 percent sodium fluoride." 7.33.2.12 NMAC (2/21/01), reprinted as amended in 7.33.2.15(A)(1), (2), (3) NMAC (4/30/10).

**{13}** At trial in the present case, Sergeant Kendall, a deputy with the McKinley County, New Mexico, Sheriff's Department testified as follows. The deputy investigated the vehicle crash in which Defendant was involved. One aspect of the investigation involved Defendant's suspected intoxicated status and a possible vehicular homicide. Deputy Kendall

5

obtained a search warrant to extract Defendant's blood. The blood was extracted at the Gallup, New Mexico, Indian Medical Center. The blood draw had to be done by a medical person. The deputy had an unused blood kit prepared for this purpose by the SLD. He also had a form that went with the blood kit titled "Report of Blood Alcohol Analysis." Deputy Kendall observed Defendant's blood being drawn in the emergency room by medical personnel, namely, a nurse. He identified the completed report form, which contained his signature. The nurse also signed the report form as "Jolene Richardson, R.N." Deputy Kendall testified that based upon his training and experience, "R.N." is the abbreviation for "registered nurse." Although he had not previously met the blood drawer, and although he did not have knowledge whether the blood drawer was licensed, Deputy Kendall testified to having no concern at all that this person may have been impersonating a nurse and observed that the nurse was appropriately dressed, had a stethoscope, and displayed from her uniform a Gallup Indian Medical Center identification tag which included her picture, name, and title. In drawing the blood, the nurse used the contents of the SLD-provided kit, including a non-alcohol based swab to clean the arm prior to the blood extraction. After the nurse inserted the needle into Defendant's vein, she attached the first SLD-provided vacuum tube to the needle that drew out a sample of Defendant's blood, handed that tube directly to Deputy Kendall, and then obtained another sample in the second SLD-provided vacuum tube, which was also handed directly to the deputy. Deputy Kendall labeled and sealed the two vials of blood and mailed the form and the kit containing the blood samples to the SLD.

**Our Conclusions**

**{14}** We hold that the foregoing evidence relating to the the blood drawer's identity and qualification and to the manner of drawing the blood satisfied the State's foundation burden for admission of the report sufficient to withstand Defendant's objection to admission of the report based on his view that the testimony did not establish the propriety of the blood draw and the qualification of the blood drawer. *See Dedman*, 2004-NMSC-037, ¶¶ 1, 21, 30, 45 (holding that compliance with a particular blood-sample collection regulatory requirement was not a prerequisite to the admissibility of the blood-alcohol report and that the testimony of the toxicologist who prepared the report and of the officer in whose presence the blood was drawn provided sufficient foundation for admission of the report), *overruled on other grounds by Bullcoming*, 2010-NMSC-007, ¶¶ 1, 16, 18. We therefore see no basis on which to hold that the report was inadmissible unless under *Bullcoming* it was inadmissible on confrontation grounds. *See Dedman*, 2004-NMSC-037, ¶ 25 ("The right of confrontation requires an independent inquiry that is not satisfied by a determination that evidence is admissible under a hearsay exception."), *overruled on other grounds by Bullcoming*, 2010-NMSC-007, ¶¶ 1, 12, 16, 18.

**{15}** On the confrontation issue, in the present case a forensic toxicologist was qualified as an expert and testified that he received the kit containing Defendant's blood, he checked the seals to assure they had not been tampered with, he tested Defendant's BAC using a gas chromatograph, and he prepared his report. He also testified that Defendant's blood sample came in a standard SLD blood kit, he checked the identifications on the specimen against the Report of Blood Alcohol Analysis form, and he identified the blood-drawer's signature on the form as "Jolene Richardson, R.N." and her employer "GIMC." He further testified as to the recording of the results of the lab tests "via the computer and the gas chromatograph"

6

after which "a reviewer . . . reviews all the work [to] be sure that everything—all the criteria [have] been met." In addition, he testified that the results were placed on the form, and he signed off on the form as an analyst for SLD. The toxicologist was thus available to be cross-examined regarding the operation of the testing machine and the SLD's procedures. Defendant did not challenge the toxicologist's testimony. Nor does Defendant attack admission of the report on confrontation grounds based on the absence at trial of any SLD analyst.

**{16}** Under *Bullcoming*, a defendant's confrontation right is not violated and a blood-alcohol report of the results of a machine-tested blood sample may be admitted where an otherwise qualified analyst testifies to the machine's blood-test results that are recorded or transcribed by a testing analyst who acts merely as a scrivener. *See* 2010-NMSC-007, ¶¶ 1, 19. Once, as here, the State has satisfied the blood-drawer qualification and blood-draw method foundation requirements for admission of the test results, we see no basis on which to deny admission of the blood-alcohol report on confrontation grounds because the blood drawer is not present at trial to be cross-examined. After blood-drawer qualification and blood-draw procedure foundational requirements are out of the way, the need to cross-examine the blood drawer is reduced to questions of the chain of custody. As we read *Melendez-Diaz* and *Bullcoming*'s reference to the *Melendez-Diaz* footnote, the absence of the blood drawer from trial and opportunity for a defendant to cross-examine the blood drawer relating to chain of custody does not provide grounds for a confrontation objection to the admissibility of a blood-alcohol report.

**CONCLUSION**

**{17}** We hold that *Bullcoming* does not change our conclusion in our April 20, 2009, memorandum opinion that the district court did not err by admitting the report of the test results of Defendant's BAC into evidence. We therefore see no basis on which to change or overrule, and we affirm, this Court's ultimate disposition in our April 20, 2009, memorandum opinion, reversing Defendant's DWI conviction and remanding it to the district court with instructions to vacate Defendant's conviction for DWI on double jeopardy grounds and affirming Defendant's remaining convictions.

**{18}    IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**

7

**Topic Index for *State v. Nez*, Docket No. 26,811**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CT | Confrontation |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-BT | Blood/Breath Tests |
| EV-CC | Chain of Custody |
| EV-HR | Hearsay Evidence |
| | |
| **GV** | **GOVERNMENT** |
| GV-IA | Implied Consent Act |