# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2017-NMSC-029

Filing Date: October 5, 2017

Docket No. S-1-SC-36197

STATE OF NEW MEXICO,

        Plaintiff-Petitioner,

v.

LARESSA VARGAS,

        Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Briana H. Zamora, District Judge

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Steven James Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Respondent

## OPINION

**CHÁVEZ, Justice.**

**{1}**    The United States Supreme Court recently held that (1) a law enforcement officer may require a warrantless alcohol breath test from a person who is arrested for driving while intoxicated (DWI) from alcohol because a breath test is a reasonable search incident to arrest, but (2) an officer cannot require a warrantless blood test unless the officer has probable cause to require the blood test and demonstrates exigent circumstances. *Birchfield v. North Dakota*, ___ U.S. ___, ___, 136 S. Ct. 2160, 2184-86 (2016). Thus, under *Birchfield*, a person who is arrested for DWI may be punished for refusing to submit to a

breath test under an implied consent law, but may not be punished for refusing to consent to or submit to a blood test under an implied consent law unless the officer either (a) obtains a warrant, or (b) proves probable cause to require the blood test in addition to exigent circumstances.

**{2}** In this case, defendant Laressa Vargas consented to and submitted to two breath tests, but refused to consent to a blood test. The arresting officer did not obtain a warrant for a blood test, nor could he do so under New Mexico law, because he did not have probable cause to believe that Vargas had committed a felony or caused death or great bodily injury to another person while driving a motor vehicle under the influence of alcohol or a controlled substance as required by NMSA 1978, Section 66-8-111(A) (2005). Vargas was convicted of violating NMSA 1978, Section 66-8-102(D)(3) (2010, amended 2016) because she refused to submit to a blood test; she received a sentence of ninety days in jail, with credit for seventy-five days for time served.

**{3}** The *Birchfield* opinion had not been decided when the Bernalillo County Metropolitan Court entered its judgment convicting Vargas; however, *Birchfield* was published while Vargas's appeal was pending before the New Mexico Court of Appeals. The Court of Appeals applied *Birchfield* and reversed Vargas's conviction for aggravated DWI. *See State v. Vargas*, 2017-NMCA-023, ¶¶ 2, 26, 389 P.3d 1080. We granted the State's petition for writ of certiorari to consider whether the Court of Appeals erred in applying *Birchfield*. *State v. Vargas*, 2016-NMCERT-___ (No. S-1-SC-36197, Feb. 14, 2017). We conclude that the Court of Appeals correctly applied *Birchfield* to the pending appeal because of a person's fundamental right under the Fourth Amendment of the United States Constitution not to be subjected to unreasonable searches, and because *Birchfield* prohibits punishment under implied consent laws based on an arrestee's refusal to consent to and submit to a warrantless blood test. *See Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2160, 2186.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{4}** On April 23, 2011 at approximately 1:00 a.m., Bernalillo County Deputy Sheriff Patrick Rael was part of a force conducting a DWI checkpoint on Coors Boulevard in Albuquerque when he encountered Vargas. As Vargas approached the checkpoint, she stopped fifteen to twenty yards before she reached where Deputy Rael was standing, and Deputy Rael waved his flashlight to get her attention to indicate that she should move forward. Vargas then rolled down her window and said "good afternoon," which Deputy Rael found odd, given the time of night.

**{5}** Deputy Rael immediately noticed the odor of alcohol emanating from both Vargas's person and her vehicle. He also observed that Vargas's eyes were bloodshot and watery. Deputy Rael asked Vargas if she had been drinking, to which she answered that she had not. She explained that she was the designated driver for her passenger, who had been drinking. Deputy Rael described Vargas as "confused" and "nervous."

2

**{6}** Deputy Rael requested that Vargas submit to field sobriety tests (FSTs), and Vargas agreed. Vargas performed poorly on the FSTs. At that point Deputy Rael believed that Vargas was intoxicated and could not safely operate a vehicle, so he placed her under arrest.

**{7}** Deputy Rael read the pertinent provisions of the New Mexico Implied Consent Act to Vargas, after which she agreed to a breath test. Vargas provided two breath test samples, which resulted in readings of 0.04 at 1:33 a.m. and 0.05 at 1:35 a.m. Because he believed that the breath test results were inconsistent with Vargas's signs of impairment, Deputy Rael determined that a blood test was the only other means to confirm Vargas's intoxication, particularly because he suspected that drugs were the cause of her impairment. Deputy Rael then reread the Implied Consent Act to Vargas and explained that he was entitled to ask her for both a breath test and a blood test. He subsequently asked Vargas to submit to a blood test, and she agreed to do so. Deputy Rael wanted to verify Vargas's answer, so he asked her again if she was willing to submit to a blood test. Deputy Rael explained that the possible consequences of refusing the blood test included an aggravated sentence and license revocation. Vargas refused to take the blood test the second time she was asked, and she was subsequently charged with aggravated DWI.

**{8}** At the conclusion of the bench trial, the metropolitan court determined that the State had proved beyond a reasonable doubt that Vargas drove while she was under the influence of alcohol to the slightest degree.[1] It also concluded that officers have the discretion to request breath tests, blood tests, or both, and that Vargas's refusal aggravated the underlying DWI. The metropolitan court sentenced Vargas to a term of ninety days in jail for aggravated DWI under Section 66-8-102(D)(3) (2010), which provides that

> [a]ggravated driving under the influence of intoxicating liquor or drugs consists of: refusing to submit to chemical testing, as provided for in the Implied Consent Act, and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs.

---

[1]While Section 66-8-102(A) does not provide the exact language of "impaired to the slightest degree," *State v. Sisneros*, 1938-NMSC-049, 42 N.M. 500, 82 P.2d 274 effectively created that standard, and *State v. Gurule*, 2011-NMCA-042, 149 N.M. 599, 252 P.3d 823 reaffirms it. *See Sisneros*, 1938-NMSC-049, ¶ 18 ("A person who has taken a drink of intoxicating liquor is not necessarily under its influence; but if it affects him so that, to the slightest degree, 'he is less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public,' he is under the 'influence of intoxicating liquor' within the meaning of the statute." (citation omitted)); *see also Gurule*, 2011-NMCA-042, ¶ 7 (stating that a defendant found to be "impaired to the slightest degree" has violated Section 66-8-102(A)).

3

**{9}**     Vargas subsequently appealed to the Second Judicial District Court and then to the Court of Appeals.  After the United States Supreme Court decided *Birchfield*, Vargas raised for the first time on appeal to the Court of Appeals the defense that the warrantless request for the blood test was an unreasonable search under the Fourth Amendment, and that her refusal to submit to it could not be used to prove aggravated DWI.

**{10}**     Although the Court of Appeals concluded that Vargas's constitutional argument was not preserved, it decided the issue on the merits.  *See Vargas*, 2017-NMCA-023, ¶¶ 14-15. The Court reversed Vargas's aggravated DWI conviction and remanded the case to the metropolitan court for resentencing on the DWI charge based on Vargas being impaired to the slightest degree pursuant to Section 66-8-102(A).  *Id.* ¶¶ 2, 9, 19, 26.  The State makes two arguments before us:  (1) *Birchfield* does not apply retroactively, and (2) the Court of Appeals erred in applying *Birchfield* because the issue was not preserved.

## II.     DISCUSSION

### A.     *Birchfield* Applies Retroactively

**{11}**     The State's argument that *Birchfield* should not be applied retroactively is not persuasive.  In *Teague v. Lane*, the United States Supreme Court established the analysis that courts must follow to determine whether a new rule applies retroactively.  *See* 489 U.S. 288, 299-310 (1989).  New Mexico courts have adopted this analysis.  *See Kersey v. Hatch*, 2010-NMSC-020, ¶¶ 21, 25, 148 N.M. 381, 237 P.3d 683.  "An appellate court's consideration of whether a rule should be retroactively or prospectively applied is invoked only when the rule at issue is in fact a new rule."  *State v. Mascareñas*, 2000-NMSC-017, ¶ 24, 129 N.M. 230, 4 P.3d 1221 (internal quotation marks omitted).  The *Teague* Court determined that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."  489 U.S. at 301 (emphasis omitted).  The new rule "applies to cases pending on direct appeal, as long as the issue was raised and preserved below . . . ."  *Kersey*, 2010-NMSC-020, ¶ 19 (citing *State v. Nunez*, 2000-NMSC-013, ¶ 114, 129 N.M. 63, 2 P.3d 264).  Vargas did not preserve her Fourth Amendment argument in the metropolitan court.  Nonetheless, the Court of Appeals properly exercised its discretion to address her unpreserved argument because of the fundamental right to be free from illegal searches and seizures, including warrantless blood tests.  *See Vargas*, 2017-NMCA-023, ¶ 15.  *Birchfield* announced an expansion of courts' previous understanding of blood tests under the Fourth Amendment.  *See* ___ U.S. at ___, 136 S. Ct. at 2174-76 ("[T]he founding era does not provide any definitive guidance as to whether [breath and blood tests to measure blood alcohol content (BAC)] should be allowed incident to arrest.  Lacking such guidance . . . we examine the degree to which [they] intrud[e] upon an individual's privacy and . . . the degree to which [they are] needed for the promotion of legitimate governmental interests." (fourth through seventh alterations in original) (footnote omitted) (internal quotation marks and citation omitted)).  *Birchfield* specifically held for the first time that police officers do not need to obtain a search warrant for a breath test from a subject because a breath test is a search incident to arrest, but officers must obtain a search warrant for a blood test unless

4

probable cause for the blood test and exigent circumstances are present. *Id.* at ___, 136 S. Ct. at 2185. This new rule cannot apply retroactively unless "(1) it is a substantive rule that alters the range of conduct or the class of persons that the law punishes, or (2) it is a watershed rule of criminal procedure." *Kersey*, 2010-NMSC-020, ¶ 31.

**{12}** The rule recently announced in *Birchfield* fits squarely within the first *Teague* exception to the general principle against retroactive application because the new rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Teague*, 489 U.S. at 307 (citation omitted). *Birchfield* bars criminal sanctions previously imposed upon a subject for refusing to submit to warrantless blood tests. *See* ___ U.S. at ___, 136 S. Ct. at 2185-86. Therefore, *Birchfield* is applicable here.

**B.    The Court of Appeals Had Broad Discretion to Review Sua Sponte the Unpreserved Fourth Amendment Issue on Appeal**

**{13}** Generally, "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ." Rule 12-216(A) NMRA (1993); *see also* Rule 3-706(I) NMRA ("The Rules of Civil Procedure for the District Courts shall govern the procedure on appeal from the metropolitan court."). During her bench trial, Vargas moved to suppress any indication of her drug use and her refusal of the blood test based on three grounds: (1) Deputy Rael did not perform a drug recognition evaluation, (2) there were no blood results, and (3) the theory upon which the State was prosecuting Vargas was ambiguous. The metropolitan court denied Vargas's motion and focused primarily on her third reason in concluding that the State had discretion to prosecute based on either alcohol intoxication, drug-induced intoxication, or both. Importantly, Vargas's motion to suppress was not based on the Fourth Amendment grounds which formed the basis of her argument to the Court of Appeals, and as a result, the metropolitan court's ruling did not apply to the specific constitutional issue on appeal. Therefore, this issue was not properly preserved under Rule 12-216(A) (1993).

**{14}** However, questions involving "general public interest [or] fundamental error or fundamental rights of a party" are exceptions to the general rule requiring preservation. Rule 12-216(B)(1)-(2) (1993). "[F]reedom from illegal search and seizure is a fundamental right," which is a matter of general public interest, and an appellate court may exercise its discretion to consider an issue involving search and seizure protections even if it is not preserved by a defendant. *State v. Gomez*, 1997-NMSC-006, ¶ 31 n.4, 122 N.M. 777, 932 P.2d 1.

**{15}** The State's concern with the Court of Appeals's review sua sponte of the merits of Vargas's argument is that it was not provided an opportunity for additional briefing to address the scope and applicability of *Birchfield*, and was therefore inhibited from developing the record to address the circumstances that would support probable cause and exigent circumstances justifying a warrantless blood test. We agree that the Court of Appeals

should have asked for additional briefing, particularly to address *Birchfield*, which was decided while the present case was on appeal. Nevertheless, we remind litigants that when an appellate court fails to request supplemental briefing, filing a motion for rehearing is a valid option when the motion is "based upon a point of law . . . not raised, briefed or argued by any party but relied upon by the court in its disposition of the matter . . . ." Rule 12-404(A) NMRA (2009). Despite the fact that the Court of Appeals did not ask for additional briefing, the record in this case is adequate to address the proper application of *Birchfield*, and we therefore conclude that the Court of Appeals did not abuse its discretion by addressing the application of *Birchfield*.

**C.    Vargas Was Unconstitutionally Punished for Refusing to Submit to an Unreasonable Blood Test**

**{16}**    We review the merits of Vargas's Fourth Amendment argument de novo. *See State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032 ("The legality of a search . . . turns on the question of reasonableness [and we] review the determination of reasonableness de novo.").

**{17}**    "The Fourth Amendment, incorporated against state actors [such as police officers] via the Fourteenth Amendment, requires that all searches and seizures be reasonable in their execution." *State v. Leyva*, 2011-NMSC-009, ¶ 9, 149 N.M. 435, 250 P.3d 861 (citations omitted). To identify reasonableness, we balance "public interest and the [subject]'s right to personal security free from arbitrary interference by law officers." *Id.* (internal quotation marks and citation omitted).

**{18}**    Both breath tests and blood tests are searches, with each test implicating varying privacy concerns. *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2173-74, 2176. Breath tests elicit few privacy concerns; they only reveal a subject's BAC, no sample is left in the possession of the officer which may be used to obtain additional information, there is no great embarrassment associated with this testing, and the tests collect only breath, which we expel at all times. *Id.* at ___, 136 S. Ct. at 2176-78. In contrast to breath, we do not regularly shed blood, and a blood test provides an officer with a sample from which more information than mere BAC can be extracted. *Id.* at ___, 136 S. Ct. at 2178.

**{19}**    The Fourth Amendment permits warrantless breath tests incident to legal arrests because noninvasive breath tests only slightly impact a subject's privacy and because the state has an interest in testing BAC to maintain highway safety and deter drunk driving. *Id.* at ___, 136 S. Ct. at 2184. The *Birchfield* Court held that blood tests bear too heavily on a subject's privacy interests to permit the state to seize warrantless samples at all DWI stops. *Id.* at ___, 136 S. Ct. at 2178. Therefore, when a subject does not consent to such a search, officers must obtain a warrant or establish probable cause and exigent circumstances to justify a warrantless search. *See id.* at ___, 136 S. Ct. at 2185-86 (concluding that drivers do not consent to criminal penalties for refusing invasive blood tests by virtue of driving on public roads). Vargas consented to two breath tests. Deputy Rael subsequently asked Vargas

to consent to a warrantless blood draw. Because she refused, Deputy Rael should have assumed that a warrant was necessary, unless probable cause to request the blood test and exigent circumstances obviated the need for a warrant.

**{20}** Section 66-8-111(A) defines the probable cause that is necessary to obtain a warrant when a person under arrest refuses to consent to a chemical test.

> If a person under arrest for violation of an offense enumerated in the Motor Vehicle Code . . . refuses upon request of a law enforcement officer to submit to chemical tests designated by the law enforcement agency as provided in Section 66-8-107 NMSA 1978 [the implied consent provision], none shall be administered except when a municipal judge, magistrate or district judge issues a search warrant authorizing chemical tests as provided in Section 66-8-107 NMSA 1978 upon [the judge] finding in a law enforcement officer's written affidavit that there is probable cause to believe that the person has driven a motor vehicle while under the influence of alcohol or a controlled substance, thereby causing the death or great bodily injury of another person, or there is probable cause to believe that the person has committed a felony while under the influence of alcohol or a controlled substance and that chemical tests as provided in Section 66-8-107 NMSA 1978 will produce material evidence in a felony prosecution.

**{21}** Deputy Rael had probable cause to believe that Vargas had driven a motor vehicle while under the influence of alcohol or a controlled substance, but he did not have probable cause to believe that Vargas had caused the death or great bodily injury of another person while driving under the influence. Nor did Deputy Rael have probable cause to believe that Vargas had committed a felony while under the influence of alcohol or a controlled substance and that the chemical test would produce material evidence in a felony prosecution. Vargas's arrest occurred at a DWI checkpoint. The State does not contend that she was driving under the influence and caused either death or great bodily injury to another. The State also does not contend that Vargas committed a felony while she was under the influence of alcohol or another substance.

**{22}** Because Deputy Rael lacked the probable cause required by Section 66-8-111(A) to obtain a warrant, whether exigent circumstances existed is not relevant. *See State v. Tywayne H.*, 1997-NMCA-015, ¶ 16, 123 N.M. 42, 933 P.2d 251 ("[W]arrantless searches are only permissible if they fall within an exception to the warrant requirement. Exceptions include . . . probable cause plus exigent circumstances . . . ." (citation omitted)). Therefore, Deputy Rael's warrantless request of Vargas's blood sample cannot be justified as reasonable. Vargas was warned of potential additional punishment if she refused to submit to what was an unreasonable search. Implied consent laws can no longer provide that a driver impliedly consents to a blood draw. *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2185. We conclude that Vargas cannot be subjected to criminal penalties for refusing to submit to an unreasonable search. *Contra id.*, ___ U.S. at ___, 136 S. Ct. at 2172, 2185-86 (reasoning

that if the warrantless search comports with the Fourth Amendment, "it follows that a State may criminalize the refusal to comply with a demand to submit to the required testing").

## III.     CONCLUSION

**{23}**     For the foregoing reasons, we affirm the Court of Appeals in reversing Vargas's conviction for aggravated DWI and remanding for resentencing on DWI, impaired to the slightest degree.

**{24}     IT IS SO ORDERED.**

           _____

           **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**