**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMCA-016**

**Filing Date: December 9, 2019**

**No. A-1-CA-36905**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**WARREN BRAND FRANKLIN
a/k/a WARREN B. FRANKLIN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Drew D. Tatum, District Judge**

Released for Publication April 7, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellant

**OPINION**

**ATTREP, Judge.**

**{1}**    Defendant appeals his conviction for driving under the influence of intoxicating liquor or drugs (DUI), contrary to NMSA 1978, Section 66-8-102(A) (2010, amended 2016), raising, among other issues, the voluntariness of his consent to a blood draw in light of the United States Supreme Court's decision in *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160 (2016). *Birchfield* held that a blood draw was not a valid

search incident to a DUI arrest and motorists cannot be said to impliedly consent to such a search "on pain of committing a criminal offense." *Id.* at 2184-86. As for a motorist who consents to a blood test after threat of heightened criminal penalties—commonplace in many states' implied consent laws at the time—the Supreme Court held that the voluntariness of such consent must be determined from the totality of the circumstances, including the inaccurate threat. *Id.* at 2186.

**{2}**     In light of *Birchfield*, our courts have held that "[i]mplied consent laws can no longer provide that a driver impliedly consents to a blood draw" and a defendant can no longer be subjected to criminal penalties for refusing to submit to a warrantless blood draw. *State v. Vargas*, 2017-NMSC-029, ¶ 22, 404 P.3d 416; *see also State v. Storey*, 2018-NMCA-009, ¶ 1, 410 P.3d 256. In this case, Defendant did not refuse but instead consented to the requested blood test. Our courts have yet to analyze *Birchfield* under such circumstances, and we thus take this opportunity to formally adopt the portion of *Birchfield* that addresses these circumstances. The district court below failed to properly consider and apply *Birchfield* in denying Defendant's motion to suppress his blood evidence. We thus reverse and remand for the district court to redetermine its ruling in light of *Birchfield* and this opinion and for any further proceedings consistent therewith. As for Defendant's remaining arguments, we conclude they are without merit.

## BACKGROUND

**{3}**     The following facts were established at trial. Defendant was involved in an accident with another vehicle while driving his truck one afternoon in Curry County, New Mexico. Defendant was driving a dually-trailer combination and slowed to make a left turn when another driver operating a tractor-trailer attempted to pass him in the left lane. The tractor-trailer struck the driver's side of Defendant's truck and Defendant was ejected from his truck. Both drivers sustained injuries; Defendant suffered a broken back, ribs, and lacerations. The first law enforcement officer who responded to the scene of the accident discovered a pack of beer in Defendant's truck—one bottle was open, four were unopened, and several were unaccounted for. Defendant testified that the beers were in the truck from the day before, he had not drunk any while driving, and he had not drunk anything within an hour-and-a-half before the accident. Defendant, however, admitted he had a beer or two with lunch earlier that day.

**{4}**     Defendant was initially transported by ambulance from the scene of the accident to a hospital in Clovis for treatment for his injuries before being airlifted to a hospital in Lubbock, Texas. Deputy Antonio Salazar, of the Curry County Sheriff's Office, was present at the Clovis hospital. Pursuant to the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019), Deputy Salazar advised Defendant that his consent for a breath or blood test was being requested and that Deputy Salazar was choosing a blood test. Deputy Salazar testified that he read Defendant an implied consent advisory from a card. The parties dispute whether Deputy Salazar advised Defendant that his failure to consent could cause Defendant to face enhanced criminal penalties, as provided in Section 66-8-102(D)(3) and (E). At first, Deputy Salazar testified that he read the enhanced penalties from the card, but then on redirect was

more equivocal. Defendant testified that, while being treated at the hospital, Deputy Salazar asked for a blood test and then read the implied consent advisory. Defendant stated that he initially refused the blood test and requested a breath test; however, Deputy Salazar told him that he did not have a breathalyzer available and that a blood test was "the only thing that they could do." Defendant testified that he submitted to the blood test after Deputy Salazar threatened him with enhanced criminal penalties.

{5}     Deputy Salazar oversaw the administration of the blood draw and provided to the blood drawer a kit approved by the Scientific Laboratory Division of the Department of Health (SLD). Deputy Salazar testified that he witnessed a nurse or technician employed by the hospital draw Defendant's blood and ensured the kit would be submitted to SLD. Steve Schenick, the SLD analyst who analyzed Defendant's blood sample, was certified by the district court as an expert in drug analysis. Mr. Schenick testified that the result of the blood test was a blood alcohol content (BAC) of .08 grams of alcohol per 100 milliliters of blood. The State did not seek to admit the blood test report or related documents.

{6}     The State initially filed charges against Defendant in magistrate court. A jury was selected and a trial date was set approximately three weeks later. Before the trial commenced and prior to swearing in the jury, the State moved to dismiss the matter without prejudice, over Defendant's objection. The State thereafter refiled the case in district court. In the district court, Defendant filed a combined motion to dismiss and motion to suppress. In support of his motion to dismiss, Defendant argued that the proceedings in district court violated his right to be free from double jeopardy since a jury had been selected in magistrate court. In support of his motion to suppress, Defendant argued that the blood test results should be suppressed pursuant to *Birchfield*.

{7}     At the suppression hearing, the district court took no evidence. Defendant argued for suppression based on the premise that the officer threatened Defendant with criminal penalties to obtain his consent to a blood test and that this violated *Birchfield*. The State responded that the penalty portion of the implied consent advisory was not read, and, regardless of whether *Birchfield* applies, exigent circumstances justified the warrantless search. The district court took the matter under advisement and then issued a written order denying the motion without explanation. Defense counsel renewed the motion to suppress at the beginning of the trial and prior to any evidence being taken. The district court again denied the motion, explaining only that, based on current New Mexico case law, the court could not grant the motion. The matter proceeded to a bench trial, and, based on the evidence outlined above, Defendant was convicted of DUI.

## DISCUSSION

{8}     Defendant argues the district court erred in denying his motion to suppress because, under *Birchfield*, his consent to the blood test was not voluntary. Defendant additionally contends that the State failed to lay a proper foundation for the admission of testimony regarding the blood draw, the State violated his right to confrontation, and the

State failed to establish a nexus between BAC and time of driving. Defendant finally asserts the district court erred in denying his motion to dismiss on double jeopardy grounds. We reverse and remand based on Defendant's *Birchfield* argument. We reject Defendant's remaining claims of error.

## I.     Harmless Error

**{9}**     Since the vast majority of Defendant's claims of error relate to the admission of the blood test results, as an initial matter, we dispose of the State's contention that even if the blood test results were admitted in error, such error was harmless. The State maintains the admission of the blood test results was harmless because ample evidence supported the finding that Defendant drove impaired, and the district court need not have relied on the testimony concerning the blood test results in finding Defendant guilty of DUI. As support for its position, the State cites *State v. Hernandez*, 1999-NMCA-105, 127 N.M 769, 987 P.2d 1156, where we stated "the erroneous admission of evidence in a bench trial is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision." *Id.* ¶ 22.

**{10}**     Although Defendant was convicted under the "impaired to the slightest degree" standard, rather than a per se standard of DUI, *see* § 66-8-102(A), (C)(1), we previously have held that BAC remains relevant in cases where DUI is based on a defendant's impairment to the slightest degree. *See, e.g.*, *State v. Garnenez*, 2015-NMCA-022, ¶ 34, 344 P.3d 1054 ("BAC results are relevant under the [impaired] to the slightest degree theory to show that a defendant had alcohol in his or her system and, regardless of the numerical BAC, tended to show that the defendant's poor driving was a result of drinking liquor." (alterations, omission, internal quotation marks, and citation omitted)). In the present case, there is no indication that the district court did not consider testimony concerning the blood test results. To the contrary, when announcing its verdict, the district court expressly stated the blood test results of .08 were "concerning." In addition, two of the State's witnesses, Deputy Salazar and Mr. Schenick, testified in detail regarding the process to obtain a blood test, procedures for analyzing the sample, and the blood test results. Under these circumstances, it is not possible to conclude the district court did not rely on the blood test results. *See Hernandez*, 1999-NMCA-105, ¶¶ 22-23. Accordingly, any error that may exist with respect to the admission of the blood test results was not harmless.

## II.     *Birchfield* and Warrantless Blood Tests

**{11}**     Relying on *Birchfield*, Defendant argues that individuals can no longer be deemed to have consented to a blood test "on pain of committing a criminal offense," and that the implied consent advisory Deputy Salazar read to Defendant was unconstitutional because it informed Defendant of the possibility for enhanced criminal penalties if he refused to consent to a blood test. 136 S. Ct. at 2186. Defendant therefore asserts that, because his consent to the blood test was premised on an inaccurate threat of heightened criminal penalties for refusal, the consent was not voluntary. The State argues there was no error under *Birchfield* because Defendant

consented to the blood test without threat of heightened criminal penalties, and, in any event, exigent circumstances permitted taking Defendant's blood without a warrant.

**{12}** As explained later, we do not delve into the factual disputes inherent in the parties' arguments. We instead limit our inquiry to a legal matter—the validity of a search premised on a motorist's consent to a blood test on threat of criminal penalty in light of *Birchfield*—which we conduct de novo. *See State v. Vargas*, 2017-NMSC-029, ¶ 16, 404 P.3d 416 (reviewing a defendant's Fourth Amendment argument founded on *Birchfield* de novo).[1] In *Birchfield*, the United States Supreme Court held that a warrantless breath test may lawfully be administered upon arrest for drunk driving, but "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample." 136 S. Ct. at 2185. The Court then analyzed whether implied consent laws that impose criminal penalties on a refusal to submit to such a test could provide a legal basis for obtaining a warrantless blood sample. *Id.* at 2185-86. Answering in the negative, the Court "conclude[d] that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2186.

**{13}** Our Supreme Court subsequently has recognized that "*Birchfield* prohibits punishment under implied consent laws based on an arrestee's refusal to consent to and submit to a warrantless blood test." *Vargas*, 2017-NMSC-029, ¶ 3. Further, "[i]mplied consent laws can no longer provide that a driver impliedly consents to a blood draw." *Id.* ¶ 22. Thus, the law in New Mexico is clear that warrantless blood draws are not permitted in the absence of either (1) valid consent or (2) probable cause to require the blood test in addition to exigent circumstances. *See id.* ¶¶ 1, 3, 19 (holding that "when a subject does not consent to such a search, officers must obtain a warrant or establish probable cause and exigent circumstances to justify a warrantless search"); *see also Gallegos v. Vernier*, 2019-NMCA-020, ¶ 25, ___ P.3d ___ ("A warrantless blood test, performed without consent, is presumptively unreasonable unless the state actors involved had probable cause *and* exigent circumstances sufficient to justify it." (alteration, internal quotation marks, and citation omitted)), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37431, Feb. 18, 2019).

**{14}** In the present case, it is undisputed that Defendant's blood was drawn without a warrant. The State nevertheless argues that the blood draw withstands constitutional scrutiny because Defendant validly consented to the blood test or, alternatively, exigent circumstances combined with probable cause existed.

## A.    Consent

**{15}** Since *Birchfield*, our courts have not yet had the opportunity to examine a case where, as here, a defendant consents to a blood test, but argues the consent was not

---

[1]In addition to making a search and seizure argument, Defendant invokes the due process clause. Defendant, however, does not develop his due process argument and we decline to consider it further. See State v. Duttle, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant."); see also State v. Guerra, 2012-NMSC-014, ¶ 21, 278 P.3d 1031, 1037 (explaining that appellate courts do not review unclear or undeveloped arguments).

voluntary because it was given only in response to inaccurate threats of heightened criminal penalties for refusal. *Birchfield* involved three consolidated matters, one of which addressed the scenario at issue in this case. In pertinent part, petitioner Beylund submitted to a blood test after police told him that the law required his submission. 136 S. Ct. at 2186. The arresting officer read Beylund an implied consent advisory, which informed him that refusing a blood test was itself a crime. *Id.* at 2172. Beylund argued his consent was coerced by this warning. *Id.* The Supreme Court noted that the state supreme court's determination that Beylund voluntarily consented to the test was based "on the erroneous assumption that the [s]tate could permissibly compel both blood and breath tests." *Id.* at 2186. Following its conclusion that the law cannot impose criminal penalties for the refusal to submit to a blood test, the Supreme Court remanded for consideration, based on the totality of the circumstances, of whether Beylund's consent was voluntary "given the partial inaccuracy of the officer's advisory." *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

**{16}** In New Mexico, we likewise examine the totality of the circumstances to determine whether a defendant's consent is voluntary. *See State v. Davis*, 2013-NMSC-028, ¶ 13, 304 P.3d 10 ("The [s]tate has the burden of proving that, under the totality of the circumstances, consent to search was given freely and voluntarily." (citing *Schneckloth*, 412 U.S. at 227)). Our courts have been clear that "[t]he voluntariness of consent is a factual question" for the district court. *Id.*; *see also Gallegos*, 2019-NMCA-020, ¶ 23 ("[W]hether [the motorist] consented to the blood draw is a question of fact that must be determined by the district court in the first instance."); *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038 ("The voluntariness of a consent to search is initially a question of fact for the trial court."). We thus hold that when a defendant raises *Birchfield*, asserting his or her consent to a blood test was involuntary due to a partially inaccurate advisory, the district court must assess the voluntariness of the consent in light of the totality of the circumstances, including the improper implied consent advisory. 136 S. Ct. at 2186.

**{17}** In this case, the district court twice summarily denied Defendant's motion to suppress without taking any evidence, apparently believing *Birchfield* simply did not apply. As a result, not only did the district court make no findings regarding the issue of voluntariness, but it made no findings regarding the preliminary matter of whether Deputy Salazar informed Defendant that he faced heightened criminal penalties should he refuse a blood draw. The parties on appeal dispute whether the trial testimony demonstrates this fact and urge us to rule accordingly. We decline to do so because our role is not to find facts the district court neglected to make in the first instance. And while we often rely on presumptions in resolving factual disputes in our review of suppression rulings, *see State v. Chacon*, 2018-NMCA-065, ¶ 19, 429 P.3d 347 ("[W]hen the evidence is conflicting, we indulge in all reasonable presumptions in favor of the district court's ruling, disregarding all evidence and inferences to the contrary, and when evidence is uncontradicted, we presume the district court believed the uncontradicted evidence, unless it indicates to the contrary on the record."), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37232, Oct. 11, 2018), we decline to do so in

this instance—where the district court did not consider any evidence and appears to have ruled on purely legal grounds.

**{18}** We thus remand to the district court. *See State v. Paul T.*, 1999-NMSC-037, ¶ 29, 128 N.M. 360, 993 P.2d 74 (remanding to the district court to determine voluntariness where the district court did not previously base its suppression ruling on consent). The district court should determine whether the criminal penalty portion of the implied consent advisory was read to Defendant prior to his consent. *See State v. Baldonado*, 1992-NMCA-140, ¶ 11, 115 N.M. 106, 847 P.2d 751 (remanding to the district court for redetermination of suppression motion where it was unknown what facts the district court found). And, if so, the district court should determine whether Defendant's consent, under the totality of the circumstances, was voluntary "given the partial inaccuracy of the officer's advisory." *Birchfield*, 136 S. Ct. at 2186; *see also Davis*, 2013-NMSC-028, ¶ 10 ("The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." (internal quotation marks and citation omitted)).

## B.    Exigent Circumstances

**{19}** With regard to the State's additional argument that probable cause to require the blood test, combined with exigent circumstances, justified the warrantless blood draw, we again are unable to discern from the district court's ruling whether it considered the applicability of this exception to the warrant requirement. Indeed, nothing in the district court's written order or later oral denial indicates a resolution of this question. Much like the voluntariness of consent, the question of exigency heavily depends on the particular facts and circumstances of a case. *See Gallegos*, 2019-NMCA-020, ¶ 25 (providing that "[i]n the context of exigent circumstances that would support a warrantless blood draw in a case involving suspected [DUI], there are no categorical rules—such as the dissipation of blood-alcohol evidence—establishing per se exigency" and that "such cases require a finely tuned approach and demand that the courts evaluate each case of alleged exigency based on its own facts and circumstances" (alterations, internal quotation marks, and citation omitted)).

**{20}** We therefore leave it to the district court on remand to determine, as necessary, whether exigent circumstances and probable cause justified the warrantless blood draw. *See id.* If the district court determines either (1) Defendant validly consented to the blood draw, or (2) probable cause combined with exigent circumstances were present, the warrantless blood draw would be justified. *See Birchfield*, 136 S. Ct. at 2186 (leaving open the possibility that the petitioner's valid consent would justify a warrantless blood draw); *Vargas*, 2017-NMSC-029, ¶ 19 ("[W]hen a subject does not consent to [a blood draw], officers must obtain a warrant or establish probable cause and exigent circumstances to justify a warrantless search."). Otherwise, the blood evidence must be suppressed.

## III.    Defendant's Other Objections to the Blood Test

**{21}** Although we reverse and remand on the *Birchfield* issue, in the event the district court determines, on remand, that Defendant's consent to the blood test was valid or there existed probable cause and exigent circumstances otherwise justifying the blood draw, the evidence will not be suppressed. We therefore address Defendant's remaining arguments concerning the blood test.

## A. Foundation

**{22}** Defendant argues that the evidence was insufficient to establish his blood was drawn by an authorized individual, as required by NMSA 1978, Section 66-8-103 (1978), the individual who performed the blood draw was required to testify, and the district court erred in admitting testimony concerning the blood test and blood results over his evidentiary objections. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

**{23}** Section 66-8-103 mandates that "[o]nly a physician, licensed professional or practical nurse or laboratory technician or technologist employed by a hospital or physician shall withdraw blood from any person in the performance of a blood-alcohol test." *See* § 66-8-109(A) ("Only the persons authorized by Section 66-8-103 . . . shall withdraw blood from any person for the purpose of determining its alcohol or drug content."). The State bears the burden of proving Defendant's blood was drawn by an authorized individual. *State v. Garcia*, 2016-NMCA-044, ¶ 23, 370 P.3d 791.

**{24}** Defendant claims that the individual who performed the blood draw was required to testify. This, however, is not a requirement under the law. To the contrary, we previously have held testimony similar to that elicited here is sufficient to demonstrate "the propriety of the blood draw and the qualification of the blood drawer." *See State v. Nez*, 2010-NMCA-092, ¶¶ 13-14, 148 N.M. 914, 242 P.3d 481. In *Nez*, an officer who witnessed the blood draw testified he observed a nurse draw the defendant's blood using a SLD-approved kit. *Id.* ¶ 13. We held that the officer's testimony concerning the blood drawer's identity and qualifications and the manner in which the blood was drawn was sufficient to satisfy the state's foundational burden and to establish the qualifications of the blood drawer. *Id.* ¶ 14.

**{25}** Similarly here, Deputy Salazar, who was present at the hospital during the blood draw, testified that he provided hospital staff a blood draw kit approved by SLD, ensured the person who drew Defendant's blood was certified by the hospital to draw blood, and saw the blood draw performed by a person he knew was either a technician or a certified nurse employed by the hospital. After the blood draw, Deputy Salazar ensured the vials were sealed, initialed them, filled out and signed the form that accompanied the kit, and submitted the kit to an evidence custodian for delivery to SLD. Under these circumstances, we conclude the district court did not abuse its discretion in finding Deputy Salazar's testimony sufficient to satisfy the State's foundational burden and to establish the blood drawer was qualified under Section 66-8-103.

## B. Right to Confrontation

**{26}** Defendant additionally claims that "[f]ailure to call expert witnesses regarding the blood/alcohol examination would be a denial of the right to cross-examine witnesses[.]" "Under the Confrontation Clause, U.S. Const. amend. VI, an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation omitted). "We review de novo a challenge made pursuant to the Confrontation Clause." *State v. Gallegos*, 2016-NMCA-076, ¶ 44, 387 P.3d 296.

**{27}** The reasons Defendant believes his right to confrontation was violated are not clear to us. Notably, Defendant has not identified any out-of-court testimonial statements that would give rise to a confrontation violation. And we are under no obligation to develop or review this unclear argument. *See Guerra*, 2012-NMSC-014, ¶ 21 (explaining that appellate courts do not review unclear or undeveloped arguments); *Duttle*, 2017-NMCA-001, ¶ 15 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant."). To the extent Defendant argues the nurse who conducted the blood draw should have been called, that issue has been addressed above and furthermore does not present a confrontation problem. *See Nez*, 2010-NMCA-092, ¶¶ 13-14, 16 (concluding that an officer's testimony regarding the nurse's blood draw of the defendant and the officer's subsequent mailing of the sample to SLD, satisfied foundational requirements and that, once the state had satisfied the foundation requirements, "the need to cross-examine the blood drawer is reduced to questions of the chain of custody," which "does not provide grounds for a confrontation objection to the admissibility of a blood-alcohol report"); *see also State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 ("The protections afforded by the Confrontation Clause do not extend to preliminary questions of fact.").

## C. Nexus Between BAC and Time of Driving

**{28}** Defendant additionally contends the evidence did not sufficiently demonstrate the BAC obtained from the blood draw accurately represented Defendant's BAC at the time of driving. This, Defendant argues, made the results of the blood test inadmissible as evidence of Defendant's BAC at the time of driving. Defendant, however, has not developed this argument or even demonstrated whether the State did in fact seek to establish that the test results showed Defendant's BAC *at the time of driving. See Guerra*, 2012-NMSC-014, ¶ 21.

**{29}** It is possible the State merely sought to admit the testimony regarding Defendant's BAC as evidence of the alcohol concentration at the time of the test, rather than at the time of driving. *See* § 66-8-110(E) (stating that if a chemical test "is administered more than three hours after the person was driving a vehicle, the test result may be introduced as evidence of the alcohol concentration in the person's blood

or breath *at the time of the test* and the trier of fact shall determine what weight to give the test result for the purpose of determining a violation of Section 66-8-102" (emphasis added)). Moreover, Defendant was convicted under Section 66-8-102(A), which requires only that the State prove Defendant was impaired to the slightest degree while driving, not that his BAC exceeded a certain level within a certain time of driving. To the extent Defendant's argument is premised on the notion that the State must have proven Defendant's BAC was at or above a certain level at the time of driving, we conclude the law does not support this contention. *See* § 66-8-102(A) (criminalizing driving under the influence of intoxicating liquor); *see also* § 66-8-102(C)(1) (criminalizing driving if BAC is .08 or more "*within three hours of driving*" (emphasis added)).

## IV.    Double Jeopardy

**{30}**    Finally, Defendant argues, as he did below, that the State was barred from bringing this case in district court on double jeopardy grounds because the State refiled the case in district court after a jury was selected, but not sworn, in magistrate court. We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. "[W]here factual issues are intertwined with the double jeopardy analysis, . . . the [district] court's fact determinations [are subject to a] deferential substantial evidence standard of review." *Id.* Jeopardy attaches when a defendant is "put to trial before the trier of the facts, whether the trier be a jury or a judge." *State v. Davis*, 1998-NMCA-148, ¶ 14, 126 N.M. 297, 968 P.2d 808 (internal quotation marks and citation omitted). For "a jury trial, jeopardy attaches at the point when a jury is impaneled and sworn to try the case." *State v. Nunez*, 2000-NMSC-013, ¶ 28, 129 N.M. 63, 2 P.3d 264.

**{31}**    The district court found the jury in magistrate court was never sworn to hear evidence. Accordingly, jeopardy never attached during the magistrate court proceedings, and double jeopardy presented no bar to the proceedings in district court. While Defendant admits the jury was never sworn in, he nevertheless maintains the State's tactics were unfair and not in good faith. Defendant provides no legal authority in support of his argument that the district court proceedings should have been barred based on principles of unfairness and bad faith. And we "will not consider an issue if no authority is cited in support of the issue and . . . given no cited authority, we assume no such authority exists." *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129. Further, to the extent Defendant asks us to change well-settled law regarding the point at which jeopardy attaches, we decline to do so.

## CONCLUSION

**{32}**    For the foregoing reasons, we reverse the district court's order denying Defendant's motion to suppress and remand for the district court to redetermine its ruling in light of *Birchfield* and this opinion and for any further proceedings consistent therewith.

**{33}** IT IS SO ORDERED.

**JENNIFER L. ATTREP**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**BRIANA H. ZAMORA, Judge**